STATE OF MONTANA EX REL. ORVILLE J. HERMAN, RELATOR, v. FLOYD E. POWELL, WARDEN OF THE MONTANA STATE PRISON, RESPONDENT, AND STATE OF MONTANA EX REL. THOMAS J. ROY, JR., RELATOR, v. FLOYD E. POWELL, WARDEN OF THE MONTANA STATE PRISON, RESPONDENT.

Nos. 10258, 10259.

Submitted October 11, 1961. Decided December 4, 1961.

367 P.2d 553.

M. K. Daniels and Wm. R. Taylor (argued orally), Deer Lodge, for appellants.

Forrest H. Anderson, Atty. Gen., M. James Sorte, Asst. Atty. Gen. (argued orally), Malcolm MacCalman, County Atty. (argued orally), Deer Lodge, for respondent.

Bernard W. Thomas, Chinook, R. H. Weidman (argued orally), Polson, amicus curiae.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Original Proceedings. Petitions for writs of habeas corpus filed herein by relators, Orville J. Herman and Thomas J. Roy, Jr.

Following the filing of such petitions this court appointed M. K. Daniels and William R. Taylor, of Deer Lodge, Montana, to represent the relators and to file briefs and orally argue in the relators' behalf.

Because the questions raised on their petitions are similar, they will be considered together. However, their records will be stated separately as follows:

*Orville J. Herman.* Orville J. Herman was received at the Montana State Prison on February 19, 1958, to serve a five year sentence. He was placed on the Montana State Prison ranch on May 27, 1958, and escaped therefrom on July 18, 1958. Five days later, he was returned to the prison and on November 13, 1958, pleaded guilty to the escape charge and was sentenced to one year imprisonment for the crime of escape.

On October 19, 1959, Orville J. Herman was paroled subject to serving the time necessary on the escape sentence. On March 15, 1960, after serving the minimum time, he was paroled *on* the escape sentence (i. e., he was allowed to serve the remainder of his prison term outside the prison walls). The expiration date of both paroles, according to the information sheets attached thereto, was November 22, 1962.

Orville J. Herman violated the conditions of his parole and on November 5, 1960, was returned to the Montana State Prison where he has ever since remained.

*Thomas J. Roy, Jr.* Thomas J. Roy, Jr., was received at the Montana State Prison on April 5, 1957, to serve a six year sentence. On November 6, 1958, he escaped from the Montana State Prison and after his capture, was sentenced to one year on the escape charge. He began serving this term on February 26, 1959.

On June 17, 1959, Thomas J. Roy, Jr., was paroled subject to serving the time necessary on the escape sentence. The expiration date of the parole, according to the information sheet attached thereto, was March 24, 1963. On December 15, 1959, after serving the minimum time, he was paroled *on* the escape sentence. The information sheet which accompanied this parole shows the expiration date as November 23, 1963.

Thomas J. Roy, Jr., violated the conditions of the parole and on July 21, 1960, the parole was revoked. He was returned to the Montana State Prison on July 25, 1960.

The contention of the relators, Orville J. Herman and Thomas

J. Roy, Jr., is that having been paroled to the escape sentences they were thereby discharged from the terms they were serving at the time such paroles were granted to them, and were entitled to be discharged from the Montana State Prison when such escape sentences were served.

Therefore, the issue involved is whether the granting of a parole to the escape sentence by virtue of the wording of R.C.M. 1947, § 94-4203, in effect resulted in a discharge of the original sentence.

Relator, Orville J. Herman, was sentenced to a term of five years in the Montana State Prison on February 17, 1958. On April 5, 1957, relator Thomas J. Roy, Jr., was sentenced to a six year term. Only one of three events might discharge relators from custody of the law: (1) an absolute pardon from the governor; (2) their death prior to the expiration of their sentences; or (3) the expiration of their maximum sentences. None of these events occurred nor was it contended that they had.

The state board of pardons, hereinafter referred to as the "Board", has no power, statutory or otherwise, to change or alter relators' maximum sentences. Its power is limited to permitting a convict to leave the enclosure of the Montana State Prison after he has served a period of confinement fixed for him by the Board in accordance with R.C.M. 1947, § 94-9833.

R.C.M.1947, § 94-9832, provides:

"The board shall *release on parole* any person confined in the Montana state prison, except persons under sentence of death, *when in its opinion there is reasonable probability that the prisoner can be released without detriment to himself or to the community* * * *." Emphasis supplied.

However, neither section 94-9832, nor any other section in our code gives the Board power to *extinguish* a former sentence by paroling a man to a subsequent sentence. To sustain such an argument would have the effect of granting to

the Board the right to *pardon* or *commute* a sentence. This, of course, cannot be done because the exclusive power to pardon and commute a sentence rests in the office of the governor.

Section 9, Article VII, of the Montana Constitution, provides:

"The governor shall have the power to grant *pardons,* absolute or conditional, and to remit fines and forfeitures, and to grant *commutation* of *punishments* and respites after conviction and judgment for any offenses committed against the criminal laws of the state; Provided, however, That before granting pardons, remitting fines and forfeitures, or commuting punishments, the governor shall be advised concerning the same and that such action has been approved by a board, or a majority thereof, who shall be known as the board of pardons. The legislative assembly shall by law prescribe for the appointment and composition of said board of pardons, its powers and duties; and regulate the proceedings thereof." Emphasis supplied.

A parole releases from confinement a convict who has been committed to an institution, before the expiration of his sentence. R.C.M.1947, § 94-9823, subd. (b), gives the following definition of the word "parole":

" 'Parole' is the release to the community of a prisoner by the decision of the board prior to the expiration of his term, subject to conditions imposed by the board and subject to its supervision."

In McCoy v. Harris, 108 Utah 407, 160 P.2d 721, 722, it was stated:

"* * * Granting of a parole does not change the status of a prisoner; it merely 'pushes back the prison walls' and allows him the wider freedom of movement while serving his sentence. The paroled prisoner is legally in custody the same as the prisoner allowed the liberty of the prison yard, or of working on the prison farm. The realm in which he serves has been extended. He is in the custody of the state and serving

his sentence outside of the prison rather than within the walls. The parole system is reformatory and founded upon a plan and policy of helping the inmate to gain strength and resistance to temptation, to build up his self control, to adjust his attitudes and actions to social controls and standards; and it aims to extend his liberties and opportunities for normal living within the social fabric as his strength to meet new responsibilities grows and develops.''

In Jenkins v. Madigan, 7 Cir., 211 F.2d 904, 906, the court said:

''A parole is not a suspension of a sentence. It is a substitution during the continuance of the parole, of a lower grade of punishment, by confinement in the legal custody and under the control of the warden within the specified prison bounds outside the prison, for the confinement within the prison adjudged by the court. While the parolee is out of prison under the parole, he is still serving his sentence.''

R.C.M.1947, § 94-9832, sums it up as follows:

''Before ordering the parole of any prisoner, the board shall have the prisoner appear before it and shall interview him. A parole shall be ordered *only for the best interest of society,* not as an award of clemency; *it shall not be considered a reduction of sentence or pardon.* A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. *Every prisoner while on parole shall remain in the legal custody of the institution from which he was released, but shall be subject to the orders of the board.''* Emphasis supplied.

A pardon, on the other hand, releases the offender from the entire punishment prescribed for the offense and from the disabilities consequent on his conviction; it reinstates his civil liberties. See Board of Prison Com'rs v. De Moss, 157 Ky. 289, 163 S.W. 183. And ''commutation is the change of punishment to which a person has been condemned to a

less severe one." People ex rel. Smith v. Jenkins, 325 Ill. 372, 156 N.E. 290, 292.

■ "The granting of a parole is not a matter of right but is a matter of grace, privilege, or clemency granted to the deserving, and withheld from the undeserving, as sound official discretion may dictate." State v. Farmer, 39 Wash.2d 675, 237 P.2d 734, 736. A prisoner is not entitled to release as a matter of right until he has completed his maximum sentence.

The relators, Orville J. Herman and Thomas J. Roy, Jr., were paroled on their original sentences subject to serving the time necessary on their escape sentences. Such paroles remained in full force and effect and were in no way nullified, revoked or cancelled by the subsequent paroles "on the escape sentences."

■ The practice of the Board of issuing two separate sets of parole papers when an inmate in the Montana State Prison is serving consecutive sentences is cumbersome and confusing. However, the object to be served thereby is well within the spirit and intent of the Probation, Parole and Executive Clemency Act (i. e., to permit worthy inmates to go out on parole). Section 94-9832, supra, indicates that all inmates confined in the Montana State Prison are eligible for parole except those under sentence of death. Nowhere in the Act is it suggested that an inmate confined with multiple sentences, whether concurrent or consecutive, is ineligible for parole. On the contrary, section 94-9833, clearly indicates that such an inmate is eligible for parole:

"A prisoner having served one-fourth (¼) of his term or *terms,* less good time allowances, shall upon parole, be deemed as released on parole until the expiration of the maximum term or *terms* for which he was sentenced less good time allowances as provided in section 80-740." Emphasis supplied.

The Board could, in order to avoid any ambiguity or confusion in the case of consecutive sentences, issue one parole to cover the maximum period of confinement. The result, of

course, would be the same. That is, the prisoner would be required to serve a period equivalent to one-fourth of the combined total of each sentence (less good time) before he would be eligible for parole. And, the fact that relators' subsequent sentences are escape sentences in no way affects this result.

R.C.M.1947, § 94-4203, provides:

"Every prisoner confined in state prison for a term less than life, who escapes therefrom is punishable by imprisonment in the state prison for a term of not less than one year nor more than ten years; said second term of imprisonment to commence from the time he would have otherwise been *discharged* from said prison." Emphasis supplied.

The inclusion of this section in the Probation, Parole and Executive Clemency Act is obvious. The legislature intended to make it clear that an escape sentence is to run consecutively and not concurrently with the original sentence. This section does not deal with paroles and, therefore, does not stand for the proposition that an inmate, who has escaped from prison, must serve his entire original sentence in prison plus his escape sentence upon apprehension before being considered for parole.

"Discharge" as used in section 94-4203 (above-quoted), does not mean "release on parole." A "discharge" releases a person entirely from custody; his debt to the state is considered "paid in full." A "release on parole", on the other hand, is merely a conditional release from actual confinement contingent upon future conduct and subjecting the person so released to future confinement for the unserved portion of his sentence, or sentences, if he should violate the conditions of his parole.

The earliest dates that relators could be discharged from their original sentences are as follows: Orville J. Herman, February 19, 1963; Thomas J. Roy, Jr., April 4, 1963. (The amount of good time allowed relators is of no consequence here due to that part of R.C.M.1947, § 80-740, which provides in effect that a convict, by escaping, forfeits all his good time.)

With the escape sentences added, the discharge dates would be changed to February 19, 1964, for Orville J. Herman; April 4, 1964, for Thomas J. Roy, Jr.

It clearly appears that there is no merit in the applications of the relators and such applications should be denied.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and DOYLE concur.