**James P. KELLY, Petitioner–Appellant,**

**v.**

**Henry RISLEY, Respondent–Appellee.**

**No. 87–3696.**

United States Court of Appeals, Ninth Circuit.

Submitted June 6, 1988.[*]

Decided Jan. 9, 1989.

As Amended Feb. 27, 1989.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

James P. Kelly, Deer Lodge, Mont., pro se.

Nick A. Rotering, Dept. of Institutions, Helena, Mont., for respondent-appellee.

Before WRIGHT, FERGUSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

James P. Kelly, appellant, appeals the district court's dismissal of his habeas corpus petition, brought under 28 U.S.C. § 2254, for failure to state a claim for habeas corpus relief. Kelly alleges that he was wrongfully denied an annual review of denial of parole in violation of Administrative Rules of Montana (ARM) 20.25.401(8), and that ARM section 20.25.304(3) violates his right to equal protection, as guaranteed by the Fourteenth Amendment.

Kelly was initially sentenced in January 1980 to ten years imprisonment for the crime of robbery. He was designated as a "non-dangerous offender," thereby becoming eligible for parole after he had served one quarter of his sentence less good time earned. Montana Code Annotated, MCA, § 46–23–201. After appearing before the Parole Board ("Board") in September 1981, the Board passed him to his discharge date, citing as reasons his poor institutional conduct record, the nature of his offense and the inadequacy of his parole plan. Once Kelly was "passed to discharge," he became entitled to a yearly review of the Board's decision. ARM § 20.25.401(8).

In February 1982, Kelly escaped from prison. He was arrested and returned to Montana thereafter. He was convicted in a nonjury trial of escape and received a four year sentence to be served consecutively to his sen-

tence for robbery. In September 1982, Kelly received an annual review of the Board's decision to pass him to discharge and no changes in this decision were made. After one more annual review in 1983, he received no others.

## I

■ Montana's parole statute creates a due process liberty interest in being considered eligible for parole. *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 2420–22, 96 L.Ed.2d 303 (1987). "Nowhere in the Act is it suggested that an inmate confined with multiple sentences, whether concurrent or consecutive, is ineligible for parole. On the contrary, section 94–9333 (now section 46–23–201, MCA), clearly indicates that such an inmate is eligible for parole." *Taylor v. Risley,* 210 Mont. 356, 684 P.2d 1118, 1119 (1984), quoting *Herman v. Powell,* 139 Mont. 583, 367 P.2d 553, 556 (1961). "A prisoner having served one-fourth (¼) of his term or terms, less good time allowances, shall upon parole, be deemed as released on parole until the expiration of the maximum term or terms for which he was sentenced ..." *Herman v. Powell,* 139 Mont. 583, 367 P.2d 553, 556 (1961). In commenting on the practice of the Montana Parole Board to issue two separate sets of parole papers when an inmate is serving consecutive sentences, the *Herman* court found the practice to be "cumbersome and confusing" but was within the "spirit and intent" of the Probation, Parole, and Executive Clemency Act. *Id.* The *Herman* court went on to say, "The Board could, in order to avoid any ambiguity or confusion in the case of consecutive sentences, issue one parole to cover the maximum period of confinement. The result, of course, would be the same. That is, the prisoner would be required to serve a period equivalent to one-fourth of the combined total of each sentence (less good time) before he would be eligible for parole." *Id.* 367 P.2d at 557. A prisoner on parole must still complete his sentence. Although the paroled prisoner is no longer in actual custody, he remains "in the legal custody of the institution from which he was released." *Id.* at 556 (quotation omit-

ted). "Granting of a parole does not change the status of a prisoner," for he remains in the state's custody until his term expires or is "completed." *Id.* at 555 (quotation omitted). Whenever a prisoner is sentenced for an offense committed while imprisoned the new sentence runs consecutively with the remainder of the original sentence, and the prisoner starts serving the new sentence when the original sentence has expired or when he is released on parole *in regard to the original sentence,* whichever is sooner. When the prisoner is released on parole on the original sentence, the sentences run concurrently from the time of his release on parole. MCA 46–18–401(5).

Applying these principals we now address Kelly's claims of wrongful denial of annual parole review and that ARM § 20.25.304(3) violates his right of equal protection.

## II

### A. *Annual Review*

■ Kelly alleges that he did not lose his entitlement to an annual review of his parole eligibility under ARM § 20.25.401(8) when he received his additional sentence for escape. We agree. ARM § 20.25.401 (8) specifically states that an inmate denied parole for more than one year will be afforded an annual review. ARM § 20.25.304 (3) provides:

> If the inmate receives an additional sentence after he has been received but has already been before the parole board for consideration on his first sentence, he will not be considered on his *second sentence* for parole until his original sentence is completed, provided the sentencing court ordered them to run *consecutively.* (Emphasis added)

ARM § 20.25.401(8)'s provision for annual parole review with respect to the *original* sentence is unaffected by ARM § 20.25.304(3) and, as a result, Kelly's second sentence for escape should not have deprived him of an annual review of his parole eligibility for his original sentence. *See* MCA § 46–18–401(5) (the prisoner

starts serving the new sentence when the original sentence has expired or when he is released on parole.) *Also see Herman v. Powell,* 139 Mont. 583, 367 P.2d 553, 557 (1961) (the Montana statute which requires an escape sentence to run consecutive to the original sentence does not require that an inmate who escapes must serve his entire original sentence in prison plus his escape sentence before being considered for parole). Consequently, we conclude that the state's failure to provide Kelly with an annual review of his parole eligibility on his original sentence violated his constitutional right to due process of law.

### B. *Equal Protection*

Kelly contends that ARM § 20.25.304(3) impermissibly denies him his right to parole eligibility by requiring that he complete his original sentence before being considered for parole on his second sentence. Kelly's equal protection argument turns on the word "completed" in ARM § 20.25.304(3). He apparently takes it to mean "completed in prison" or "completed in confinement." Montana law, *see Herman v. Powell, supra,* does not require that construction. In Montana, a paroled prisoner is released from confinement, but not from his sentence, *id.* 367 P.2d at 555; on parole he remains "in the legal custody of the institution from which he was released," *Id.* at 556 (citation omitted). We read the word "completed" in section 20.-25.304(3) to mean "complete one's term of legal custody." It must be further noted that ARM § 20.25.304(3) requires that the original sentence be completed before an inmate will be considered on his second sentence for parole, only when (1) the inmate receives an additional sentence after being received at the institution, (2) after already having been before the parole board for consideration on his first sentence, and (3) the court ordered the sen-

tences to run consecutively. Kelly also contends that ARM § 20.25.304(3), considered in light of ARM § 20.25.304(2), impermissibly distinguishes between prisoners, for parole consideration purposes, based on whether they have appeared before the parole board on the original sentence at the time they receive a second sentence. ARM § 20.25.304(2) states:

> If the inmate receives an additional sentence after he has been received at the institution, but before his appearance before the board for consideration, his sentence will be combined automatically for parole and consideration purposes, unless the court orders otherwise.

■ We conclude that ARM § 20.25.304 (3) does not violate Kelly's equal protection rights. Initially, Montana accommodated Kelly's due process liberty interest in being considered eligible for parole by providing Kelly with the opportunity to appear before the Parole Board after serving the statutorily prescribed minimum of 2.5 years of his original sentence. The Board passed Kelly to discharge, finding him ineligible for parole. Accordingly, when he received his second sentence for escape, which was ordered to run *consecutively,* Montana correctly calculated that Kelly's original sentence must be completed before he could become parole eligible on his *second sentence.* ARM § 20.25.304(3). That does not mean that Kelly was not eligible for parole consideration on his first sentence. See Annual Review discussion, supra. If Kelly had been granted parole on his original sentence, the Montana Code under the title "Factors That Reduce Sentences, § 46–18–401, Merger of Sentences," subsection (5), would cause Kelly's second sentence to run *concurrently* while he served his original sentence.[1] The Board could condition the

---

1. MCA § 46–18–401. *Merger of sentences.* (1) Unless the judge otherwise orders:

   (a) whenever a person serving a term of commitment imposed by a court in this state is committed for another offense, the shorter term or shorter remaining term shall be merged in the other term except as provided in subsection (5); and

   .    .    .    .    .

   (5) Except as provided in this subsection, whenever a prisoner is sentenced for an offense committed while he was imprisoned in the state prison or while he was released on parole or under the supervised release program, the new sentence runs consecutively with the remainder of the original sentence. The prisoner starts serving the new sentence when the original sentence has expired or when he is released on

parole on his original sentence subject to Kelly serving the minimum sentence on the second (escape) sentence, and later parole him on the second sentence (which now would be converted to a concurrent sentence by reason of the parole on the original sentence) after the minimum time on that sentence has been served. In that regard, *Herman v. Powell*, 367 P.2d at 554, is instructive. Herman was serving a 5 year sentence and escaped. He was then sentenced to one year for the escape and then was paroled on the original sentence subject to serving the minimum time necessary on the escape sentence. Approximately 5 months later after serving the minimum time for the escape he was paroled on the escape sentence, thereby being allowed to serve the remainder of his prison terms outside of the prison. When Herman was granted parole on the original sentence and still in custody, the second sentence was running concurrently and expiring, and when he is released on parole on the second sentence both sentences expire during the parole term.

Because of his escape, Kelly received consecutive sentences, and his release on parole is determined by his parole eligibility on his original sentence. The conversion of his second sentence from a consecutive one to a concurrent one depends upon whether or not Kelly is granted parole on the original sentence, which is solely dependent upon his behavior and, consequently, does not impermissibly distinguish between prisoners. Kelly's equal protection claim is without merit.

### III

Accordingly, we conclude that the district court correctly dismissed Kelly's habeas corpus petition because Kelly has not stated an equal protection violation based on ARM § 20.25.304(3) or MCA § 46–18–401(5). However, Kelly's due process rights were violated by the Board's failure after 1983 to provide him with annual reviews of the Board's parole decision to

pass him to discharge. If he had been given annual reviews in 1984 and thereafter, he may have been granted parole on his original sentence, thereby converting the running of his second sentence from consecutive to concurrent. Consequently, a favorable review in 1984 or thereafter could have not only resulted in a granting of parole on the original sentence conditioned on a running of the minimum term on the second sentence, but possibly parole also on the second sentence, allowing him to complete his sentences on parole outside of prison. Accordingly, we grant his habeas corpus petition and remand to the district court with instructions for it to immediately remand to the Montana Parole Board with orders to provide Kelly with annual review(s) of the Board's parole decision to pass him to discharge with regard to his original sentence, and for further proceedings consistent with this opinion.

REMANDED.

FERGUSON, Circuit Judge, concurring:

While I agree with the holding of the majority that Kelly did not lose his entitlement to annual parole review on his original sentence under Mont.Admin.Reg. ("MAR") § 20.25.401(8) by virtue of his being sentenced to a second prison term for escape, I write separately to note that the majority miscalculates Kelly's parole eligibility with respect to his second (escape) sentence.

While the majority reads the term "completed" in MAR § 20.25.304(3) to mean "complete one's term of legal custody," they do not remain true to their own definition. The majority has this to say about Kelly's parole eligibility with respect to his second sentence:

> The Board could condition the parole on his original sentence subject to Kelly serving the minimum sentence on the second (escape) sentence, and later parole him on the second sentence (which now would be converted to a concurrent

parole under chapter 23, part 2, of this title in regard to the original sentence, whichever is sooner. In the latter case, the sentences run

concurrently from the time of his release on parole.

sentence by reason of the parole on the original sentence) after the minimum time on that sentence has been served. This passage implies that Kelly could be considered for parole on his second sentence *before* completing his term of legal custody on the original sentence—a proposition squarely at odds with the majority's earlier interpretation of MAR § 20.25.304(3)'s completion requirement. In effect, the majority approach proves too generous to Montana prisoners because it reads out MAR § 20.25.304(3)'s completion requirement, thus permitting them to become parole-eligible on their second sentences prior to fully completing their original terms.

The majority relies on *Herman v. Powell*, 139 Mont. 583, 367 P.2d 553 (1961), as a guide to calculating the parole eligibility of prisoners serving consecutive sentences. *Herman*, however, represents a factually distinct situation from that of Kelly. Petitioner Herman, while serving the first month of a five year sentence, tried unsuccessfully to escape from Montana State Prison. He received a one year sentence for his efforts, this second sentence to be served consecutively to his original sentence. Herman was subsequently conditionally paroled on the original sentence; five months later, after serving the minimum portion on his escape sentence,[1] he was paroled on this escape sentence and allowed to serve the remainder of his sentences outside prison. Thus, the *Herman* rule for calculating parole eligibility of prisoners serving consecutive sentences holds that prisoners become parole-eligible (1) with respect to their original sentences, after serving the statutory minimum on their original sentences, and (2) with respect to their second sentences, after serving the statutory minimum on that second sentence *in addition to* the minimum time required on the original sentence. *See Herman*, 367 P.2d at 555; *see also Taylor v. Risley*, 210 Mont. 356, 684 P.2d 1118, 1119 (1984) (affirming *Herman* calculation rule).

The *Herman* rule, however, is factually limited to circumstances in which the prisoner receives an additional sentence *prior to* appearing before the Board for an initial parole hearing. Since Herman escaped before his initial parole hearing, his parole eligibility on his second sentence was thus governed by the precursor to subsection 2 of MAR § 20.25.304 which does not require that prisoners "complete" their original sentences before receiving consideration for parole on their second sentences.[2] Kelly, in contrast, escaped from prison *after* receiving his parole hearing and his eligibility for parole on his second sentence thus falls under the spell of subsection 3 of MAR § 20.25.304. Thus, *Herman* provides no support for the majority's method of parole calculation.

The appropriate method of calculating Kelly's parole eligibility requires a sensitivity to the interplay between MAR § 20.25.304(3) and the related merger provision of Mont.Code Ann. ("MCA") § 46–18–401. Kelly may begin accruing prison time on his second sentence which is applicable toward MCA § 46–23–201's minimum time requirement for parole eligibility once he has either (1) served his full term on the original sentence, or (2) been granted parole with respect to the original sentence, whichever occurs sooner. *See* MCA § 46–18–401(5). The merger of sentences provision in MCA § 46–18–401(5) comes

---

1. Under then-existing Montana statutes governing parole eligibility, Herman became eligible for parole on his original sentence after serving one-quarter of his full term. *See Herman*, 367 P.2d at 555 (citing R.C.M. § 94–9832 (1947)). Like Herman, Kelly also received parole consideration prior to completing the full term on his original sentence. Under current Montana law, prisoners designated as "nondangerous" offenders, such as Kelly, may become parole eligible after serving a minimum one-quarter portion

(less good time allowance) of their sentences. *See* MCA § 46–23–201(1)(a).

2. MAR § 20.25.304(2) provides that [i]f an inmate receives an additional sentence after he has been received at the institution but before his appearance before the board for consideration, his sentences will be combined automatically for parole and [sic] consideration purposes, unless the court orders otherwise.

into play when (if ever) Kelly is actually granted parole on his original sentence.

Should Kelly be conditionally released on parole on his original sentence, pursuant to MCA § 46–18–401(5), his four year escape sentence will begin to run concurrently and expire along with his original sentence; Kelly's conditional release triggers the "clock" on the second sentence so that he can then begin serving time on that sentence.[3] Yet consistent with the requirements of MAR § 20.25.304(3), Kelly should receive no *parole consideration* on his second sentence until his original sentence has been completed to its full term *and* he has served the minimum time required—one-quarter of his 4 year escape sentence less any good time allowance—on his second sentence.

---

**3.** This simultaneous release on parole with respect to the original sentence and commencement of the prison term with respect to the second sentence represents the merger feature of MCA § 46–18–401(5).