No. 00-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 324

303 Mont. 8

15 P. 3d 884

CRISS A. CASE,

Petitioner,

v..

MIKE MAHONEY, Warden, Montana State Prison,

Respondent.

ORIGINAL PROCEEDING: Writ of Habeas Corpus

COUNSEL OF RECORD:

For Appellant:

Criss A. Case, *Pro Se*, Deer Lodge, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Diana P. Leibinger-Koch,

Special Assistant Attorney General, Montana Department of Corrections

Helena, Montana

Submitted: December 7, 2000
Decided: December 12, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Petitioner (Case) is an inmate at the Montana State Prison where he has served approximately twenty years on a 175-year sentence. He argues that he has been incorrectly declared ineligible for parole and petitions this Court for a writ of habeas corpus directing the Warden of the Montana State Prison to declare him eligible. The Montana Department of Corrections (DOC) has filed a response in opposition.

## BACKGROUND

¶2 On June 20, 1979, Case pled guilty to three counts of murder, three counts of aggravated kidnaping, one count of robbery and one count of theft. The District Court imposed a sentence of seventy-five years on each of three murder counts (to run concurrently); seventy-five years on each of three counts of aggravated kidnaping (to run concurrently); twenty years for robbery and five years for theft. The murder, kidnaping, robbery and theft sentences were all ordered to run consecutively so that the sentence resulted in a 175-year term of imprisonment. Case was designated a nondangerous offender and given credit for pretrial incarceration

## DISCUSSION

¶3 Under Montana law, any person deprived of liberty may petition this Court for a writ of habeas corpus to be delivered from illegal imprisonment or restraint. Section 46-22-101(1), MCA. Furthermore, this Court has held that prisoners sentenced prior to 1989 have a liberty interest in parole that is protected by the due process clause of the federal constitution. Worden v. Board of Pardons, 1998 MT 168, ¶ 41, 289 Mont. 459, ¶ 41, 962 P.2d 1157, ¶ 41 (citing Board of Pardons v. Allen (1987), 482 U.S. 369, 377, 107 S.Ct. 2415, 2420, 96 L.Ed.2d 303, 312). Therefore, Case's parole eligibility is a proper subject for our habeas review.

¶4 The controlling parole eligibility statute at the time of the Case's conviction was § 46-23-201(1)(a), MCA (1978). It provides in relevant part:

> [A] convict designated as a nondangerous offender under 46-18-404 may be paroled after he has served one-quarter of his full term, less the good time allowance provided for in 53-30-105. Any offender serving a time sentence may be paroled after he has served, upon his term of sentence, 17½ years.

The controversy arises out of the seeming conflict between the first and last sentences of § 46-23-201(1)(a), MCA (1978), and the application of those provisions to prisoners serving consecutive sentences. As a designated nondangerous offender, Case is eligible for parole either after he has served one-quarter of his full term, less good time, or after he has served seventeen and one-half years upon the term of his sentence. Case relies upon the second sentence of the statute to conclude that he is eligible for parole as of May 9, 1996- seventeen and one-half years after he began serving his sentence. DOC applies the "one-quarter less good time" rule to the 175-year sentence and concludes that Case is not entitled to be considered for parole until June 11, 2004.

¶5 DOC cites State ex rel. Herman and Roy v. Powell (1961), 139 Mont. 583, 367 P.2d 553, for the proposition that the one-quarter less good time rule is the only applicable rule for determining parole eligibility. In doing so, however, DOC, misstates the law and misconstrues our holding in that case. Rather than setting out a rule for determining parole eligibility, the language DOC cites from *Herman* merely suggests a method of calculating one-quarter time for inmates serving consecutive sentences.

¶6 Historically, the Board of Pardons determined parole eligibility separately for each term of a consecutive sentence. An inmate serving consecutive sentences of eight and twelve years, for example, could be paroled after two years on the first sentence but remain incarcerated serving the second sentence. After three more years he would become eligible for parole on the second sentence and could be released from prison. The net effect was the same as if the Board had simply applied the one-quarter rule to the entire term of twenty years and released the prisoner on parole after five years.

¶7 In*Herman*, the defendant had been sentenced to a five-year term in the Montana State Prison. He escaped and, following his recapture, was sentenced to an additional term of one year. Shortly thereafter, he was paroled on the original charge but remained incarcerated on the escape charge. A few months later he was paroled on the escape charge and released from prison. He then violated the conditions of parole and was returned to prison.

¶8 At the time, he had approximately two years left on his original sentence and several months left on his escape sentence. The question in the case was how much time he should serve after he was returned to prison. Herman argued that his parole on the escape charge acted as a discharge of his original sentence and he was entitled to be released from prison when the escape sentence was served. The Court presented the issue in the case as "whether the granting of a parole to the escape sentence . . . in effect resulted in a discharge of the original sentence. *Herman*, 139 Mont. at 586, 367 P.2d at 555.

¶9 The Court held, of course, that it did not. Along the way, however, we commented on the system used by the Board to calculate parole eligibility for inmates subject to consecutive sentences:

> The Board could, in order to avoid any ambiguity or confusion in the case of consecutive sentences, issue one parole to cover the maximum period of confinement. The result, of course, would be the same. That is, the prisoner would be required to serve a period equivalent to one

fourth of the combined total of each sentence (less good time) before he would be eligible for parole.

*Hermon*, 139 Mont. at 589-90, 367 P.2d at 557. What was originally an aside about how the Board of pardons might simplify the parole eligibility calculation has subsequently been cited by DOC as the "longstanding rule" of *Herman,* that prisoners are required to serve one-quarter of their total sentence before becoming eligible for parole. *See also* Taylor v. Risley (1984), 210 Mont. 356, 684 P.2d 1118.

¶10 *Taylor* came before the Court on a motion for clarification regarding a previous denial of a habeas petition. The petitioner had been serving three consecutive sentences. He was paroled on all three sentences but later had his parole revoked. In denying his habeas petition the Court stated that:

> "The action of the Board of Pardons purporting to release petitioner on parole from all three consecutive sentences was and is illegal. All the time served, whether in prison or on parole, applies only against the twenty year sentence for robbery, and petitioner has never begun serving his sentence for second degree assault or escape." *Taylor*, 210 Mont. at 357, 684 P.2d at 1119 (citation omitted). Both the petitioner and the State sought clarification of this language and its implication for the procedure for calculating parole eligibility on consecutive sentences. In *Taylor*, this Court struck this language from its previous order and reaffirmed the rule of *Herman*; i.e., that parole eligibility should be determined by applying the one-quarter rule to the *total* sentence.

¶11 Of course, neither *Herman* nor *Taylor* deals with application of the seventeen and one-half year rule to consecutive sentences. And neither resolves the apparent conflict between the "one quarter" and "seventeen and one-half year" rules that we must resolve here. Rather, they simply say that, when applying the one-quarter rule to prisoners serving consecutive sentences, the Board of Pardons should use the total term rather than the individual sentences for each offense as a basis for its calculations of parole eligibility. The issue presented here is not how one-quarter time should be calculated for prisoners serving consecutive sentences, but which of two seemingly contradictory statutory provisions applies to determine an inmate's parole eligibility.

¶12 The legislature has given us clear guidelines for construing statutes. Where a statute contains several provisions or particulars, we are to construe them, if possible, in such a way as will give effect to all. Section 1-2-101, MCA; Butte v. Indus. Accident Board (1916), 52 Mont. 75, 77, 156 P. 130, 131; Stadler v. Helena (1912), 46 Mont. 128, 139, 127 P. 454, 457. The intention of the legislature is to be pursued if possible. Section 1-2-102, MCA.

¶13 Both Case and DOC contend that the other's interpretation vitiates the remaining statutory provision. In addition, DOC argues that the seventeen and one-half year rule is either inapplicable to consecutive sentences or must be applied against each individual term to determine eligibility. It is suggested that this latter approach somehow harmonizes the two provisions, but it is unclear to this Court how one could apply both the one-quarter rule to the *total* term and the seventeen and one-half year rule to each

i*ndividual* term to achieve any rational or consistent determination of eligibility. Rather, we conclude that the only way to give effect to both provisions and the intention of the legislature is to interpret § 46-21-201(1)(a), MCA (1978), as establishing a general "one quarter less good time" rule subject to a seventeen and one-half year outer limit on parole eligibility.

¶14 Montana's original parole eligibility statute was enacted in 1907. It includes the distinction between "time" sentences and "life" sentences which has been retained in the modern statute. The original, however, more clearly indicates the character of the statute as a general rule with an outside limit on parole eligibility:

> That no convict serving a time sentence shall be paroled until he has served at least one-half of his full term, not reckoning his good time; except that any convict serving a time sentence may be paroled after he shall have served, upon his term of sentence, twelve and one half years.

Section 9573, R.C.M. (1907). Although the proportions and time limits are now one-quarter of the term and seventeen and one-half years rather than one-half of the term and twelve and one-half years, the two-part structure of today's statute is also found in the original. But, in the original, the clause dealing with the twelve and one-half year limit clearly modifies the general "one-half" rule.

¶15 In 1975, the legislature amended the statute to include a special condition for persistent felony offenders. In doing so, they shifted the modifying clause to the end and made it a new sentence:

> That no convict serving a time sentence shall be paroled until he has served at least one-quarter (1/4) of his full term, less the good time allowance off, as provided in section 80-1905; except that no convict designated a persistent felony offender under section 95-2206.5 may be paroled until he has served at least one-third (1/3) of his full term, less good time allowances off, as provided in section 80-1905. *A first offender serving a time sentence may be paroled after he has served, upon his term of sentence, twelve and one-half (12 ½) years. A persistent felony offender as defined in section 95-2206.5 may be paroled after he has served, upon his term of sentence, seventeen and one-half (17 ½) years.* [Emphasis added.]

*See* Compiler's Notes, Section 95-3214, R.C.M. (1977). The special conditions for persistent felony offenders and first offenders were dropped in 1977 and replaced with a special condition for nondangerous offenders. In doing so, the legislature left the seventeen and one-half years condition in a separate sentence. However, there is no evidence in the legislative histories that placement of this "outer limit" condition in its own sentence was other than a stylistic change necessitated by the inclusion of the special condition for persistent or nondangerous offenders and then simply retained after those provisions were deleted.

¶16 Therefore, while the two conditions in § 46-23-201(1)(a), MCA (1978), are in apparent conflict, they can be harmonized in a way that comports with the intent of the legislature. Section 46-23-201(1)(a), MCA (1978), must be read as establishing a general one quarter less good time rule subject to a

seventeen and one-half year outer limit on parole eligibility for nondangerous offenders. Under this interpretation, Case became eligible for parole after serving seventeen and one-half years of his sentence. He has already served over twenty years.

¶17 THEREFORE, IT IS HEREBY ORDERED that Case's writ of habeas corpus is GRANTED.

¶18 IT IS FURTHER ORDERED that the Warden is DIRECTED to declare Case eligible for parole.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY