No. 05-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 197N

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT EUGENE DICKERSON,

        Defendant and Appellant.


APPEAL FROM:    The District Court of the Sixth Judicial District,
In and For the County of Park, Cause Nos. DC 02-43; DC 02-44,
Honorable Richard A. Simonton, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Robert Eugene Dickerson, *pro se*, Deer Lodge, Montana.


        For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Michael S. Wellenstein,
Assistant Attorney General, Helena, Montana

        Brett D. Linneweber, Park County Attorney, Livingston, Montana


Submitted on Briefs:  February 8, 2006

Decided:  August 22, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Robert Eugene Dickerson (Dickerson) appeals the Sixth Judicial District Court's denial of his petition for clarification of judgment based on his allegation that the Department of Corrections (DOC) is unlawfully garnishing his prison wages to apply to his restitution obligations.  He also claims that the District Court erred in imposing restitution on his 2003 felony sentence. We reverse the District Court on its denial of Dickerson's petition for clarification, and conclude that Dickerson waived his right to appeal the imposition of restitution.

## ISSUES

¶3     A restatement of the issues on appeal is:

¶4     Did the District Court err in denying Dickerson's petition for clarification of his judgment?

¶5     Did the District Court err in imposing a restitution obligation on Dickerson in his 2003 sentence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6       Dickerson has an extensive criminal history but we limit our discussion to the specific offenses pertinent to the case before us which are his 1996 felony stalking charge in Gallatin County, a 1996 felony burglary charge also in Gallatin County, and his 2003 stalking and issuing bad checks charges in Park County.

¶7       In 1997, the two Gallatin County cases were combined and Dickerson entered guilty pleas to both offenses.  He was sentenced to five years with the DOC for the stalking charge and ten years with five years suspended for the felony burglary charge.  He was also ordered to pay $1,207.60 restitution to the Crime Victim's Fund and the counseling fees incurred by his stalking victim; $8,028.00 restitution for the burglary offense, and various administrative and user charges.  The sentencing order specified that the prison sentences would run concurrently and that one-third of Dickerson's prison wages were to be garnished for restitution.

¶8       Dickerson claims to have discharged his stalking sentence and the prison portion of his burglary offense on November 11, 1999.

¶9       In September 2002, at the request of the Gallatin County Attorney's Office, the Eighteenth Judicial District Court, Gallatin County, revoked Dickerson's five-year suspended sentence on his felony burglary offense for violation of conditions imposed on his suspended sentence.  The court then imposed a prison sentence on Dickerson and he was committed to the DOC for five more years with appropriate credit for time already served.  It is undisputed that the new sentence did not reinstate the restitution obligation contained in Dickerson's

3

Gallatin County burglary sentence. Dickerson also states that he discharged this burglary sentence completely on May 21, 2003.

¶10    In June 2003, Dickerson entered a guilty plea in the Sixth Judicial District Court, Park County, to two felony charges: stalking and issuing bad checks. Dickerson and the Park County Attorney agreed to two five-year concurrent sentences to the DOC. The plea agreement also provided that Dickerson would pay full restitution for the bad checks he passed in Park County, amounting to $2,205.00.

¶11    The District Court accepted the terms of the plea agreement. As to the restitution agreement, the court ordered that Dickerson "shall pay at a minimum rate of $50.00 per month beginning on parole or conditional release. Payments are due the first of each month thereafter until the total is paid." Judgment was entered on July 11, 2003.

¶12    In November 2003, Dickerson filed a Petition for Writ of Habeas Corpus before this Court. He maintained that when he was returned to the custody of the DOC for his 2003 Park County charges, the DOC began unlawfully garnishing his prison wages and applying the garnished funds to his *Gallatin County* offenses. He argued that the DOC could not garnish his wages to pay restitution for the Gallatin County offenses because he had discharged those sentences. The State countered that §§ 46-18-241 and -244, MCA, effective October 1, 2003, authorized the collection of restitution payments under these circumstances.

¶13    On February 4, 2004, we issued an Order observing generally that § 46-18-244(6)(a), MCA (2003), allowed the prison to deduct restitution from an inmate's account. However, we dismissed his Petition on the grounds that a complaint about wage garnishment does not

4

fall within the parameters of a writ of habeas corpus. Thus, we declined to reach the merits of his Petition.

¶14 On February 2, 2005, Dickerson filed a petition in the Sixth Judicial District Court seeking clarification of his Park County judgment. He argued that DOC unlawfully began garnishing his prison wages in October 2004 and applying the garnished funds to his *Park County* restitution obligations. He maintained that because his Park County sentence provided that he need not begin paying his restitution obligation until parole or conditional release, DOC had no authority to take this garnishment action. Dickerson requested that the District Court order DOC to stop garnishing his wages and to apply the unlawfully garnished amount toward his child support payments. The State responded that the District Court no longer had jurisdiction over Dickerson, having sentenced him to DOC, and that under § 46-18-244(6)(a), MCA (2003), DOC was allowed to take a percentage of Dickerson's wages and apply it toward satisfaction of his restitution responsibility.

¶15 On February 9, 2005, the District Court denied Dickerson's Petition on the grounds that it was untimely and that DOC was statutorily authorized to take the challenged funds.

¶16 Dickerson filed a timely appeal.

## STANDARD OF REVIEW

¶17 The District Court's denial of Dickerson's Petition to clarify his judgment constituted a conclusion of law. We conduct plenary review of a district court's conclusions of law to determine whether the court's conclusions are correct as a matter of law. *City of Billings v. Gonzales*, 2006 MT 24, ¶ 6, 331 Mont. 71, ¶ 6, 128 P.3d 1014, ¶ 6 (citation omitted).

5

**DISCUSSION**

¶18    Dickerson argues that the District Court erred in denying his Petition contending that it is unlawful for DOC to garnish his wages *before* he is paroled or conditionally released for the purpose of paying toward his Park County restitution obligation.  He maintains that his sentence unequivocally states that his payment of restitution begins "on parole or conditional release," and that DOC has no authority to dismiss or disregard a lawful sentencing Order.

¶19    The State responds that Dickerson's claim is barred by the doctrine of *res judicata*.  It claims that our Order denying Dickerson's Petition for a Writ of Habeas Corpus addressed Dickerson's claim that DOC was unlawfully garnishing his prison wages, therefore Dickerson is prohibited from requesting the same relief again.  We disagree.

¶20    As noted above, we concluded in our February 4, 2004 Order that a petition for writ of habeas corpus was an inappropriate vehicle for the relief Dickerson was seeking.  In dicta, we observed generally that § 46-18-244(6)(a), MCA (2003), allowed the prison to deduct restitution from an inmate's account.  Our observation, however, was not a binding ruling on DOC's garnishment of Dickerson's wages; therefore, *res judicata* does not bar Dickerson from seeking relief from this Court.

¶21    Also as noted above, the District Court denied Dickerson's Petition for clarification of his July 2003 Judgment holding that: (1) if the Petition was an appeal from his Judgment, it was untimely under Rule 5, M.R.App.P.; or (2) if the Petition was a request for post-conviction relief, it was untimely under § 46-21-102, MCA.

6

¶22 We conclude that the District Court incorrectly characterized the nature of Dickerson's *pro se* Petition. Dickerson was not seeking to appeal his sentence, nor was he seeking relief from his Judgment. Therefore, the time limitations associated with Rule 5, M.R.App.P or § 46-21-102, MCA, did not apply to his Petition.

¶23 We acknowledge that a petition styled "Petition for Clarification Judgement" [sic] is not a model of clarity, but as we have held before, with some caveats, "[f]or purposes of characterizing post-judgment motions, this Court has generally held that the substance, not the caption, of the document controls." *Moody v. Northland Royalty Co.* (1997), 286 Mont. 89, 95, 951 P.2d 18, 22. Dickerson's Petition adequately argued that he was seeking relief from what he perceived to be DOC's violation of his Judgment terms and conditions. He was not seeking relief from a court judgment or sentence; he was seeking relief from DOC's subsequent interpretation of his sentence. Therefore, we reverse the District Court's Order denying Dickerson's Petition on the ground that he did not comply with the time limitations of the appeal and post-conviction statutes.

¶24 The District Court also denied Dickerson's Petition on the ground that § 46-18-244(6)(a), MCA (2003) mandated that DOC "take a percentage, as set by department rule, of any money in any account of the defendant administered by the department and use the money to satisfy any existing restitution obligation." The court noted that § 46-18-244, MCA, enacted in 2003, was expressly retroactive to offenders who had unpaid restitution obligations in effect on October 1, 2003.

¶25 While Dickerson's Park County restitution obligation originated on July 11, 2003, and was unpaid as of October 1, 2003, this statute is nonetheless inapplicable to Dickerson's current circumstances. Section 46-18-103, MCA, vests exclusive authority to impose sentences on the district court. The District Court expressly sentenced Dickerson to restitution repayment obligations beginning *after* Dickerson is paroled or conditionally released. The State did not appeal the District Court's Order that restitution not be paid while Dickerson was incarcerated; therefore the District Court's Order is a final order and DOC cannot ignore it simply because it has a conflicting policy or believes the Order conflicts with §§ 46-18-241 or -244, MCA.

¶26 Dickerson also argues on appeal that DOC continues to unlawfully garnish his prison wages and apply some of the garnished funds toward the restitution obligations imposed on his Gallatin County sentences that have been fully discharged. While this element of the DOC's garnishment activities of Dickerson's prison wages was not raised before the Sixth Judicial District Court, it involves the same alleged unlawful activity that Dickerson raises vis-à-vis his Park County restitution, *i.e.*, DOC's unlawful garnishment of his prison wage account to pay restitution. Moreover, the State did not object to it being raised on appeal; therefore, we will address it.

¶27 The record reveals that Dickerson discharged his Gallatin County sentences in November 1999 and May 2003 respectively. Dickerson argues that, under the express language of the Notice of Discharge, he has "fulfilled all the requirements imposed upon him by the laws of the state of Montana," and "received a full and complete discharge" from his

8

Gallatin County sentences. As a result of the full discharge of these sentences, he maintains, they no longer exist and DOC cannot revive them for purposes of collecting more restitution. We agree.

¶28 The term "discharge" is not defined in the Montana criminal statutes, and therefore we look to its common meaning. Black's Law Dictionary defines "discharge" as "the release of a prisoner from confinement." Black's 475 (7th ed. 1999). The term "unconditional discharge" means "a release from confinement without any parole requirements to fulfill," and "a release from an obligation without any conditions attached." Black's 476 (7th ed. 1999). Additionally, this Court has defined "discharge" thusly: "A 'discharge' releases a person entirely from custody; his debt to the state is considered 'paid in full.'" *State v. Herman* (1961), 139 Mont. 583, 590, 367 P.2d 553, 557.

¶29 Section 46-18-801(2), MCA, provides:

Except as provided in the Montana constitution, if a person has been deprived of a civil or constitutional right by reason of conviction for an offense and the person's sentence has expired or the person has been pardoned, the person is restored to all civil rights and full citizenship, the same as if the conviction had not occurred.

¶30 While the statutes relied upon by the State do indeed have retroactive application, §§ 46-18-241 and -244, MCA, may be applied only to satisfy an "unpaid restitution obligation" or an "existing restitution obligation." Because Dickerson had fully discharged the sentences requiring payment of restitution, he had no existing or unpaid restitution obligation vis-à-vis his Gallatin County offenses at the time he returned to DOC's custody in July 2003. Moreover, as Dickerson correctly points out, at the time the Gallatin County District Court

9

revoked his suspended burglary sentence and sentenced him to prison time, the district court did not reinstate his obligation to pay restitution for this charge. Without such a court-ordered restitution obligation, DOC has no order to enforce.

¶31 We conclude, therefore, that DOC is not authorized to garnish Dickerson's prison wages for the purpose of applying such garnished funds to any former restitution obligations arising out of his Gallatin County offenses.

¶**32** Lastly, Dickerson argues that the Sixth Judicial District Court in Park County did not have statutory authority to impose a restitution obligation on him at the time he was sentenced in 2003. We decline to address this issue because even though a defendant can challenge a sentence for illegality on appeal despite having failed to raise a contemporaneous objection before the sentencing court, we still require a timely notice of appeal from the sentence as a prerequisite to our consideration of this issue. *See State v. Brister*, 2002 MT 13, ¶ 16, 308 Mont. 154, ¶ 16, 41 P.3d 314, ¶ 16. Dickerson did not file a timely appeal from his 2003 sentence therefore we decline to consider this issue.

## CONCLUSION

¶33 For the foregoing reasons, we reverse the District Court's Order denying Dickerson's Petition on the grounds of untimeliness, and remand to the District Court for entry of an order instructing DOC to cease garnishment of Dickerson's wages and to reimburse all sums collected since May 21, 2003. We dismiss Dickerson's challenge to the District Court's 2003 imposition of restitution.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER

Justice Jim Rice concurring.

¶34    I concur in the Court's holding, but not in the entirety of the rationale.  Because the issue of the meaning and effect of a "discharge" of a criminal sentence (¶¶ 27-30) was not argued below, I would not address the issue, instead waiting until the matter has been properly raised and briefed.  However, I concur in the Court's conclusion regarding the Gallatin County sentences on the ground stated by the Court in the latter part of ¶ 30—that the restitution obligation was not reimposed upon revocation, and thus, the DOC has no order to enforce.

/S/ JIM RICE