No. 95-533

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

DONALD R. SAGE,

        Petitioner and Respondent,

  v.

MICKEY GAMBLE, Director of Administration,
CRAIG THOMAS, Executive Secretary, Board of
Pardons, MONTANA BOARD OF PARDONS AND PAROLE,
MONTANA STATE PRISON,

        Respondents and Appellants.

FILED

NOV 25 1996

CLERK OF SUPREME COURT,
STATE OF MONTANA

APPEAL FROM:    District Court of the Third Judicial District,
                In and for the County of Powell,
                The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                David L. Ohler and Lois Adams, Attorneys at Law,
                Department of Corrections, Helena, Montana

        For Respondent:

                Edmund F. Sheehy, Jr., Cannon and Sheehy,
                Helena, Montana

Submitted on Briefs:  September 19, 1996

Decided:  November 25, 1996

Filed:

_____
              Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On September 9, 1994, Donald R. Sage filed a petition for habeas corpus in the District Court for the Third Judicial District in Powell County in which he alleged that the Montana Board of Pardons (Board) had improperly denied him parole. Following a hearing on Sage's petition, the District Court issued an opinion and order in which it concluded that, although the Board had not abused its discretion when it denied Sage parole, it had violated Sage's right to due process when it denied him the opportunity to personally appear at his parole hearing. The court therefore ordered the Board to conduct another hearing at which Sage could be personally present. The Board appeals the District Court's conclusion that it violated Sage's right to due process. We affirm the order of the District Court.

The issues presented on appeal are:

1. Did the District Court have subject matter jurisdiction, pursuant to a writ of habeas corpus, to determine whether Sage's right to due process was violated when he was denied the opportunity to personally appear before the Montana Board of Pardons?

2. Did the District Court err when it concluded that Sage's right to due process had been violated when he was denied the opportunity to personally appear at his parole hearing?

FACTS

In March 1982, Donald Sage was convicted by a jury of the crime of mitigated deliberate homicide. Sage was sentenced to

2

forty years in the Montana State Prison, and an additional five years to be served consecutively for the use of a deadly weapon in the commission of the offense. He was designated a dangerous offender for purposes of parole.

Sage was living at the Great Falls Pre-Release Center when he became eligible for parole in 1993. The Board of Pardons scheduled Sage's initial parole hearing for November 29, 1993. Prior to the hearing, the Board appointed its executive secretary to interview Sage. At the interview, Sage had the opportunity to present oral testimony and have other witnesses testify on his behalf. He was also asked whether the information contained in his parole file, including his offense and his sentence, were correct.

Following the interview, the executive secretary prepared a recommendation for the Board regarding Sage's application for parole. Sage was advised of this recommendation.

The Board of Pardons considered Sage's parole application at its monthly parole hearing in Deer Lodge on November 29, 1993. Sage was not present at this hearing. The record does not disclose whether he requested and was denied the opportunity to be present. Instead, the information about Sage's parole application was presented to the Board by the executive secretary. After considering all of the information before it, the Board denied Sage's parole application.

On September 9, 1994, Sage filed a petition for writ of habeas corpus with the Third Judicial District Court in which he alleged that the Board of Pardons had improperly denied him parole. In his

3

petition, Sage maintained that the Board had denied his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution when it denied him the opportunity to personally appear before the Board. Following a hearing, the District Court issued an opinion and order in which it concluded that although the Board had not abused its discretion when it denied parole, the Board had violated Sage's right to due process by failing to allow him to personally appear before the Board. The court therefore ordered that another hearing be held at which Sage could appear before the Board.

ISSUE 1

Did the District Court have subject matter jurisdiction, pursuant to a writ of habeas corpus, to determine whether Sage's right to due process was violated when he was denied the opportunity to personally appear before the Montana Board of Pardons?

On appeal, the Board of Pardons asserts that Sage's alleged due process violations fall outside the parameters of habeas corpus relief and that therefore the District Court lacked subject matter jurisdiction to consider the issue. Section 46-22-101, MCA, provides in relevant part:

> [E]very person imprisoned or otherwise restrained of liberty within this state may prosecute a writ of habeas corpus to inquire into the cause of imprisonment or restraint and, if illegal, to be delivered from the imprisonment or restraint.

Habeas corpus is available to challenge the legal sufficiency of the cause for incarceration. This Court has held, however, that

4

habeas corpus relief is not available to determine whether other constitutional rights have been violated. *Gates v. Missoula County Comm'rs* (1988), 235 Mont. 261, 766 P.2d 884.

Sage maintains that the Board waived this issue of subject matter jurisdiction by failing to raise it during the District Court proceedings and therefore should not now be permitted to raise it on appeal. It is a well-settled principle of law, however, that lack of subject matter jurisdiction cannot be waived, and may be raised at any stage of a judicial proceeding by a party or *sua sponte* by the court. *O'Donnell v. Ryans,* Inc. (1987), 227 Mont. 48, 49, 736 P.2d 965, 966; *State v. Davis* (1984), 210 Mont. 28, 30, 681 P.2d 42, 43.

Sage further asserts that the District Court did have subject matter jurisdiction to decide by writ of habeas corpus whether his right to due process had been violated. Sage maintains that he had a right to due process, based on a liberty interest in parole pursuant to § 46-23-201, MCA (1981), which was violated by the Board when it did not allow him to personally appear before the Board at the parole hearing and ultimately denied his parole application.

We conclude that the alleged deprivation of Sage's right to due process is directly related to whether the cause of his continued incarceration is or is not illegal, and therefore it falls within the parameters of § 46-22-101, MCA. We therefore hold that the District Court did have subject matter jurisdiction to determine whether Sage's right to due process was violated.

ISSUE 2

Did the District Court err when it concluded that Sage's right to due process had been violated when he was denied the opportunity to personally appear at his parole hearing?

In this case, the District Court concluded that the Board of Pardons had violated Sage's right to due process by denying him the opportunity to personally appear before the Board during his parole hearing. We review a district court's conclusion of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

In 1982, when Sage was convicted and sentenced, § 46-23-201, MCA (1981), provided:

> (1) Subject to the following restrictions, the board shall release on parole by appropriate order any person confined in the Montana state prison . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to himself or to the community . .
> . .
> (2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.

In *Board of Pardons v. Allen* (1987), 482 U.S. 369, 381, the United States Supreme Court held that the mandatory language of § 46-23-201, MCA, creates a liberty interest in parole release that is protected by the Due Process Clause of the Fourteenth Amendment. Specifically, the Court determined that "the Montana statute uses mandatory language ('shall') to 'creat[e] a presumption that parole release

6

will be granted' when the designated findings are made." <u>Allen,</u> 482 U.S. at 377-78 (footnote omitted) (interpreting § 46-23-201, MCA (1985), which is identical to the 1981 version of the statute under consideration here).[1] In this case, although the Board does not contest that § 46-23-201, MCA (1981), creates a liberty interest in parole, the Board challenges the District Court's conclusion that Sage was not accorded the minimal due process required before denying that liberty interest. In particular, the Board maintains that the District Court erred when it concluded that due process requires that a parole applicant be afforded a personal appearance in front of the Parole Board. The Board contends that its practice of authorizing a hearings officer to conduct a parole eligibility interview satisfies minimal due process requirements.

It is well established that "due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex* (1979), *442* U.S. 1, 12 (quoting *Morrissey v. Brewer* (1972), 408 U.S. 471, 481). Thus, "the process that is due in any given case varies according to the factual circumstances of the case and the nature of the interests involved." *Benson v. Scott* (7th Cir. 1984), 734 F.2d 1181, *1185.* The process provided, however, should "minimize the risk of erroneous decisions. . [T]he quantum and quality of the process.

---

[1] The mandatory language of § 46-23-201, MCA, which created a liberty interest in parole was amended by the Legislature in 1989. Therefore any prisoner sentenced after 1989 does not have a constitutionally-protected liberty interest in parole.

due in a particular situation depend upon the need to serve the purpose of **minimizing** the risk of error." *Greenholtz, 442* U.S. at 13.

Although a prisoner has a liberty interest in parole release, it is well established that a parole eligibility hearing is not subject to all the due process protections of an adversary proceeding. *See, e.g., Fardella v. Garrison* (4th Cir. 1982), 698 F.2d 208, 212. However, although the United States Supreme Court has recognized that due process in the context of parole does not require "repeated, adversary hearings," the Court has required, at minimum, that the prisoner be provided an opportunity to be heard and a written statement explaining why he was denied parole. *Greenholtz,* 442 U.S. at 14, 16. In *Greenholtz*, the Supreme Court examined the parole procedure in Nebraska and noted with approval that an inmate in Nebraska's prison system is permitted to appear before the Board at a yearly hearing and present letters and statements on his own behalf. *Greenholtz*, 442 U.S. at 15.

While it is true that the Court in *Greenholtz* did not directly address the issue of whether due process requires an opportunity to personally appear before the Board,[2] its approval of the procedure provided in Nebraska was couched almost exclusively in terms of the parole applicant's opportunity to personally appear. For example, the Court stated that:

> At the Board's initial interview hearing, the inmate is permitted to appear before the Board and present letters

---

[2]The Court noted that personal appearances were already allowed in Nebraska and that therefore the necessity of that opportunity was not an issue. *Greenholtz*, 442 U.S. at 16, fn. 8.

and statements on his own behalf.  He is thereby provided with an effective opportunity first, to insure that the records before the Board are in fact the records relating to his case; and second, to present any special considerations demonstrating why he is an appropriate candidate for parole.  Since the decision is one that must be made largely on the basis of the inmate's files, this procedure adequately safeguards against serious risks of error and thus satisfies due process.  Cf. *Richardson v. Perales,* 402 U.S. 389, 408 (1971) .

. . The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the **inmate** in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances.  The Constitution does not require more.

*Greenholtz* , 442 U.S. at 15-16 (footnote omitted)

It is reasonable, therefore, to infer from the *Greenholtz* opinion that the opportunity of a parole applicant to appear before those entrusted with the subjective responsibility of passing judgment on his or her application is an important element of the due process to which the applicant is entitled.

Furthermore, when Sage was convicted and sentenced in 1982, § 46-23-202, MCA (1981), provided:

(1)  Within 2 months after his admission and at such intervals thereafter as it determines, the board shall consider all pertinent information regarding each prisoner, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment, and attitude in prison, and the reports of any physical and mental examinations which have been made.
(2)  Before ordering the parole of any prisoner the board shall interview him.

(Emphasis added.)  To implement this statutory requirement, the Board adopted Rule 20.25.401, ARM, which provided:

(1)  An inmate will systematically come before the parole board for an interview at the time fixed by law, usually up to two months prior to the actual eligibility date . .

9

> (2) <u>All interviews and hearings before the board shall be conducted informally under the direction of the chairman.</u> The board may limit the length of the interviews or hearings in order to accommodate its schedule.

(Emphasis added.)

Based on the plain language of both § 46-23-202, MCA (1981), and Rule 20.25.401, ARM, an inmate who is eligible for parole is clearly provided the right to personally appear at an interview before the Parole Board prior to the Board's decision to grant or deny the application for parole. The Board contends that Montana's statutory scheme, however, permits it to delegate its personal interview responsibility to an appointed hearings officer. The Board cites § 46-23-104(4), MCA (1981), which provides that:

> The board may designate one of its members, one of its staff members, or any other adult correctional releasing authority to conduct interviews relative to:
> (a) parole eligibility;
> (b) plans for release on parole; or
> (c) revocation hearings.

The Board's interpretation of § 46-23-104(4) would create a contradiction between that statute and the language of § 46-23-202, MCA, and its own administrative rule, which requires an informal interview "before the parole board" which must be "conducted . . under the direction of the chairman" of that Board. Rule 20.25.401, ARM. However, nothing in § 46-23-104(4), MCA, suggests that the staff interview provided for is in lieu of other interviews required by § 46-23-202, MCA, and the Board's administrative rules. Furthermore, we conclude that an interpretation which relieves the Board of its duty to personally interview an inmate would unconstitutionally deny the inmate his

10

right to due process guaranteed by the Fourteenth Amendment to the U.S. Constitution, and independently by Article II, Section 17, of the Montana Constitution, by denying him an opportunity to be heard by those who will decide the merits of his application. See, *e.g.*, *Greenholtz*, 442 U.S. at 16. It is our duty to construe statutes, where possible, in a manner that withstands constitutional scrutiny. *State v. Martel* (1995), 273 Mont. 143, 148, 902 P.2d 14, 17.

Therefore, we interpret § 46-23-104(4), MCA (1981), to permit the Board to designate one of its members, one of its staff members, or any other adult correctional releasing authority to conduct a prehearing interview of an inmate relative to parole eligibility for the purpose of assisting the Board and expediting the hearing process. However, the prehearing interview does not, and cannot substitute for the applicant's constitutional right to personally appear before the Board.

To ignore the importance of an inmate's opportunity to appear before those who will personally decide the merits of his or her parole application is to ignore the subjective nature of the decision and the statutory requirement that those vested with such responsibility possess specific qualifications. As the U.S. Supreme Court noted in *Greenholtz*, 442 U.S. at 13:

> [T]he Parole Board's decision as defined by Nebraska's statute is necessarily subjective in part and predictive in part. Like most parole statutes, it vests very broad discretion in the Board. No ideal, error-free way to make parole-release decisions has been developed

Furthermore, § 2-15-2302(2), MCA, sets forth very specific educational and vocational background requirements for those vested

11

with the exercise of such broad discretion. To permit delegation of the personal interview to a paid staff member would defeat the purpose of those statutory requirements and necessarily render intelligent and responsible exercise of the Board's broad discretion more difficult.

We hold that compliance with § 46-23-202, MCA (1981), which provides that the Board must personally interview an inmate prior to his release on parole, is necessary to satisfy the minimum due process requirements set forth in *Greenholtz, 442* U.S. 1, and as independently required by Article II, Section 17, of the Montana Constitution. The requirement of a personal interview provides the necessary opportunity for an inmate to verify or refute the accuracy of the Board's accumulated records and to present any special considerations which might demonstrate why he or she is an appropriate candidate for parole. Such a procedure is clearly necessary to the purpose of minimizing the risk of error in a parole eligibility determination. *Greenholtz, 442* U.S. at 13.

We therefore affirm both the District Court's conclusion that it had jurisdiction to determine whether Sage's right to due process was violated, and the court's conclusion that the Board had violated Sage's right to due process when it denied him the opportunity to personally appear at his parole hearing. We hold that due process requirements of both the federal and state constitutions, and the clear mandate of § 46-23-202, MCA (1981), compel the Board of Pardons to personally interview a parole-

12

eligible inmate, who has a liberty interest in parole, at the time fixed by law.

_____
                us ice

We concur:

_____
          Chief Justice

_____

_____
              Justices

13

Justice W. William Leaphart, specially concurring.

I concur in the Court's conclusion that a defendant has a due process right to personally appear before the Board for a personal interview. In addition, I would point out that the public as well has a very compelling interest in requiring that an inmate not be released on parole without first undergoing a face to face interview with the Board.

          _____
                        Justice

Justice Charles E. Erdmann dissenting.

I join the majority's opinion on Issue 1. I respectfully dissent, however, on Issue 2.

The majority concludes that Sage not only has a statutory right to personally appear before the Board, but also that his constitutional right to due process was violated when he was denied the opportunity to personally appear before the Board upon his parole application. The majority reaches this conclusion by first applying a narrow statutory analysis to § 46-23-202, MCA (1981), which effectively ignores the remaining statutory scheme as set forth by the Montana Legislature. The majority then changes tack and undertakes an expansive constitutional analysis involving Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (1979), 442 U.S. 1. The majority relies on <u>Greenholtz</u> to resolve issues which the United States Supreme Court explicitly declined to address in that case.

We have consistently held that when several statutes apply to a given situation, if it is at all possible, a construction is to be adopted as will give effect to all. City of Bozeman v. Racicot (1992), 253 Mont. 204, 208-09, 832 P.2d 767, 769; Schuman v. Bestrom (1985), 214 Mont. 410, 415, 693 P.2d 536, 538; § 1-2-101, MCA.

> It is good statutory construction law that where one part of the law deals with a subject in general and comprehensive terms, while another part of it deals in a more minute and definite way, the two parts should be read together and, if possible, harmonized, with a view to giving effect to a consistent legislative policy.

15

<u>Schuman</u>, 693 P.2d at 539.

Contrary to the statutory arguments presented by the majority, I am not convinced that the Board's use of its executive secretary, Craig Thomas, to conduct the parole eligibility interview, or Sage's failure to personally appear before the Board, violated any statutory provisions. Thomas was designated by the Board to conduct Sage's parole eligibility interview. Section 46-23-104(4), MCA (1981), provides that:

> The board may designate one of its members, one of its staff members, or any other adult correctional releasing authority to conduct interviews relative to:
>  (a) parole eligibility;
>  (b) plans for release on parole; or
>  (c) revocation hearings.

Thomas serves as the Montana Board of Pardon's Executive Secretary, which is a position defined as a "staff member" by Rule 20.25.101(2), ARM. Thus § 46-23-104(4), MCA (1981), allows the Board to delegate the prisoner's interview, as provided for in § 46-23-202, MCA (1981), to Thomas as a "staff member." The Board's utilization of Thomas to conduct the parole eligibility interview was therefore clearly within statutory constraints.

The majority glosses over § 46-23-104(4), MCA (1981), by inferring that the Board's authority to designate an individual under this section is limited to a "pre-hearing interview." The plain language of this section simply does not limit the interview which may be conducted by a designated individual to a pre-hearing interview. Section 46-23-104(4), MCA (1981), refers to <u>interviews relative to parole eligibility</u>, which is exactly what is at issue

16

in this case and includes the interview which is provided for in § 46-23-202, MCA (1981).

In addition, the majority asserts that interpreting § 46-23-104(4), MCA (1981), to apply to § 46-23-202, MCA (1981), creates a contradiction between that statute and the language of the Board's administrative rule which requires that an informal interview "before the board" 'shall be "conducted . under the direction of the chairman" of that Board. Rule 20.25.401, ARM. We have recognized that the Legislature, in enacting law, is presumed to have knowledge of the existing law. Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 866 P.2d 218. The same role can be applied to an administrative agency when adopting rules, as rules which conflict with statutory requirements are invalid. Section 2-4-305(6), MCA; Taylor v. Taylor (1995), 272 Mont. 30, 36, 899 P.2d 523, 526. When Rule 20.25.401, ARM, was adopted by the Board, § 46-23-104(4), MCA, was in effect and we can presume the Board was aware of its provisions. The rule must therefore be construed in light of § 46-23-104(4), MCA, which allows a designated individual to conduct parole interviews. There simply is no contradiction between the statutory scheme and the administrative rule.

Furthermore, the 1981 parole eligibility statutory scheme provides that the Board shall be required to hear oral statements from all persons desiring to be heard. Section 46-23-204, MCA (1981), provides:

17

> The board shall be required to hear _oral_ statements from all persons desiring to be heard before the board, and any person may be represented by counsel, provided that the board shall have the power to regulate procedure at all hearings.

(Emphasis added.) It cannot be disputed that the language, "all persons desiring to be heard" includes parole applicants, particularly given the right to be represented by counsel. The record does not reflect that Sage exercised his statutory right to be personally present at a hearing before the Board under this section by requesting or expressing a desire to make an oral statement before the Board. Thus, I would determine that Sage's personal appearance at his interview was sufficient to meet the statutory requirements.

The majority next asserts that Sage's constitutional right to due process was violated when his personal appearance was before an individual designated by the Board and not before the Board itself. The majority argues that it is reasonable to infer from _Greenholtz_, 442 U.S. 1, that the opportunity of a parole applicant to appear before the Board itself is an important element of the due process to which the applicant is entitled. The majority, however, concedes that the United States Supreme Court did not directly address this issue in _Greenholtz_ since a personal appearance before the board is a statutory requirement in Nebraska. Its reliance on _Greenholtz_ for this proposition is thus misplaced. The United States Supreme Court stated that due process requires that the inmate be provided with an effective opportunity to insure that the records before the Board are in fact the records relating to his

18

case and that he be provided with the opportunity to present any special considerations demonstrating why he is an appropriate candidate for parole. Greenholtz, 442 U.S. at 15.

In this case, Sage was provided with a personal parole eligibility interview and was provided the opportunity to request a personal hearing before the Parole Board under the provisions of § 46-23-204, MCA (1981). He had the opportunity to correct the record relating to his case. He was allowed to present oral testimony and have other witnesses testify on his behalf. The Board considered the pre-parole investigation report, written statements, and Thomas's recommendation. Because he was afforded these opportunities and was provided with a written statement setting forth the reasons for the Board's denials of parole, Sage was provided with due process, as required by both the Montana and United States Constitutions, and there was no deprivation of a constitutionally protected interest.

I would reverse the District Court on this issue.

_____
Justice

Chief Justice J. A. Turnage and Justice Karla M. Gray join in the foregoing dissenting opinion.

_____
Chief Justice

_____
Justice

19