No. 97-394

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 168

RON WORDEN; JOHN FAIRSERVICE; FAYE

SLICE; and TIMOTHY OWENS, on behalf of

themselves and all others similarly situated, and the

MONTANA DEFENDER PROJECT,

Plaintiffs and Appellants,

v.

MONTANA BOARD OF PARDONS and PAROLE,

JOHN THOMAS, JULENE KENNERLY, PATRICK

FLEMING and MARY JO FOX,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis & Clark,

The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jeffrey T. Renz (argued); Montana Defender Project, Missoula, Montana

For Respondents:

David Ohler, Matthew A. Robertson (argued) Special Attorneys General,

Montana Department of Corrections, Helena, Montana

Argued: April 3, 1998

Submitted: April 30, 1998

Decided: July 7, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1 Appellants Ron Worden (Worden), John Fairservice (Fairservice), Timothy Owens (Owens), Faye Slice (Slice) and other similarly-situated inmates at the**

Montana State Prison (collectively referred to as "Inmates") appeal from the order of the First Judicial District Court, Lewis & Clark County, dismissing their class action suit against the Montana Board of Pardons and Parole (Board of Pardons) and board members John Thomas, Julene Kennerly, Patrick Fleming, and Mary Jo Fox. We reverse in part, affirm in part, and remand.

¶2 In determining whether the District Court erred in dismissing the Inmates' complaint for failure to state a claim, we address the following issues:

¶3 1.  Does Article II, Section 9 of the Montana Constitution (right to know) require the Board of Pardons to grant the Inmates access to their parole files?

¶4 2.  Do the Inmates have a right to inspect their parole files under the due process clauses of the Montana or federal constitutions?

Standard of Review

¶5 A district court's decision to dismiss a complaint for failure to state a claim upon which relief may be granted is a conclusion of law. Hollister v. Forsythe (1996), 277 Mont. 23, 26, 918 P.2d 665, 667. We review conclusions of law to determine whether the district court is correct. Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 207, 900 P.2d 314, 317. A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pled allegations in the complaint. Lockwood, 900 P.2d at 317. Thus, in considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff, and all allegations of fact must be taken as true. Hollister, 918 P.2d at 667.

Factual and Procedural Background

¶6 The following facts, as alleged in the Inmates' complaint, are taken as true:

¶7 Inmates Worden, Fairservice, and Owens are incarcerated at the Montana State Prison in Deer Lodge, Montana. Inmate Slice was formerly incarcerated at the Women's Correctional Center and is currently on parole. Each allege that they have been denied access to all or part of their files by the Board of Pardons.

¶8 Worden was convicted of felonies in 1979, 1981, and 1996. He alleges that prior to hearings before the Board of Pardons, he asked to review and copy documents

contained in his parole records and was denied. On January 26, 1994, a student intern for the Montana Defender Project who was representing Worden at a parole hearing requested to inspect and copy Worden's files. Worden's student counsel was given access to only part of the file and was told he would have to copy the information by hand. He asked to see Worden's psychological examination and was told by Board of Pardons personnel that neither he nor Worden could view that information, but that the evaluation would not be considered by the Board of Pardons. However, at his hearing, members of the Board of Pardons told Worden that they had seen his psychological evaluation and that Worden should know what problems he needed to address. Worden was denied parole.

¶9 Fairservice was convicted of a felony in 1991. He appeared before the Board of Pardons on June 30, 1994 and was denied parole that same day. After learning that the decision was based in part on information provided by third parties, he asked to see the documents contained in his file. The Board of Pardons denied his request. Fairservice appeared before the Board of Pardons again on June 29, 1995. At this hearing, several witnesses, some of whom Fairservice did not know, testified in opposition to his release. Fairservice was denied parole. Again, he asked to see the information in his file and was denied.

¶10 Owens, who was convicted of a felony on August 17, 1990, was granted parole. However, at a parole revocation hearing, his attorney asked to inspect the files held by the Board of Pardons and was denied.

¶11 Slice was incarcerated in the Women's Correctional Center after her felony conviction in 1987. She applied for prerelease, and, prior to the hearing on her application, she was denied access to her file. Her application for prerelease was rejected.

¶12 The Inmates filed a class action complaint against the Board of Pardons and individual members of the Board. The Inmates allege that the Board of Pardons violated Article II, Section 9 of the Montana Constitution (right to know) and § 2-6-102, MCA (right to inspect and copy public writings) by refusing to allow them to inspect and copy their files. Those Inmates who were serving sentences for crimes committed before the 1989 amendment of § 46-23-201, MCA (eligibility for parole) also claim that the Board of Pardons violated their due process rights under the federal and Montana constitutions. The Montana Defender Project was also named

as a plaintiff in the suit. However, because it will no longer be representing Inmates before the Board of Pardons, the Defender Project states that the issue of whether its rights have been violated has been rendered moot and does not appeal.

¶13 The Board of Pardons moved to dismiss the complaint for failure to state a claim for which relief could be granted. The District Court dismissed the complaint. The court held that neither the federal nor Montana due process clauses requires that Inmates be allowed to inspect their parole files. The District Court further held that § 46-23-108, MCA, creates an expectation of privacy for individuals who disclose information to the Board of Pardons and that this privacy interest outweighs the Inmates' right to know.

Discussion

¶14 1. Does Article II, Section 9 of the Montana Constitution (right to know) require the Board of Pardons to grant the Inmates access to their parole files?

¶15 The Inmates claim that by refusing to allow them access to their parole files, the Board of Pardons is violating Article II, Section 9 of the Montana Constitution. The District Court dismissed this claim, holding that the Inmates had failed to state a claim on which relief could be granted. The District Court did not have before it any of the Inmates' files, and, consequently, they are not part of the record on review. Therefore, we look to the pleadings to determine whether the District Court erred in holding that the Inmates did not sufficiently state a claim for violation of the right to know.

¶16 Article II, Section 9 of the Montana Constitution states: "No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." In analyzing the right to know in Becky v. Butte-Silver Bow School Dist. No. 1 (1995), 274 Mont. 131, 906 P.2d 193, we set forth the following three-part test:

> First, we consider whether the provision applies to the particular political subdivision against whom enforcement is sought. Second, we determine whether the documents in question are "documents of public bodies" subject to public inspection. Finally, if the first two requirements are satisfied, we

decide whether a privacy interest is present, and if so, whether the demand of individual privacy clearly exceeds the merits of public disclosure.

Becky, 906 P.2d at 196.

¶17 The Board of Pardons is an agency under the administration of the Department of Corrections. Section 2-15-2302(6), MCA. Its members are appointed by the governor to serve in a quasi-judicial capacity and are compensated as provided by legislative appropriation. Section 2-15-2302(7), MCA. Undoubtedly, the Board of Pardons is a public agency to which the right to know applies.

¶18 Next, we determine whether the Inmates' parole files are "documents of public bodies" subject to public inspection. Art. II, § 9, Mont. Const. The Inmates wish to review the contents of their own files, but contend that the files should not be available to the general public. The Inmates argue that in O'Neill v. Dep't of Revenue (1987), 227 Mont. 226, 234, 739 P.2d 456, 461, this Court drew "a distinction between public disclosure and limited disclosure to the . . . party . . . ." The State contends that the Inmates' request to have the parole files opened for their individual review, but closed to the public, necessarily implies that these files are not public documents to which the right to know applies.

¶19 We agree that the right to know grants the public the right to examine documents of public bodies. Becky, 906 P.2d at 196. Thus, Article II, Section 9 of the Montana Constitution does not apply to the Inmates' files unless they are open to review by every citizen. The distinction made by this Court in O'Neill between limited review by the party and general review by the public was not drawn to determine whether the subject documents were "documents of public bodies" under Article II, Section 9, but rather to aid in weighing the merits of disclosure against individual privacy interests. See O'Neill, 739 P.2d at 461.

¶20 Neither the Montana Constitution nor Montana statutes define "documents of public bodies." However, this Court has held that the term "must reasonably be held to mean documents generated or maintained by a public body which are somehow related to the function and duties of that body." Becky, 906 P.2d at 197. Because the Inmates' files are not before us, we cannot determine whether they contain documents generated by the Board of Pardons or other public bodies, documents generated by private third parties, or both. However, this is not fatal to our

classification of the files as "documents of public bodies." Regardless of their content, the Inmates' files are maintained by the Board of Pardons and are used by the Board in the performance of its official duties -- determining whether an Inmate is eligible for parole. See § 46-23-104, MCA (defining responsibilities of the Board of Pardons). Thus, we hold that the Inmates' files are "documents of public bodies" within the scope of Article II, Section 9 of the Montana Constitution.

¶21 Under its plain language, the right to know does not apply when "the demand of individual privacy clearly exceeds the merits of public disclosure." Art. II, § 9, Mont. Const. Thus, having determined that the right to know applies to the Inmates' parole files, we next determine the privacy interests involved and weigh these interests against the merits of public disclosure. Becky, 906 P.2d at 196. To determine whether a person has a constitutionally-protected privacy interest, this Court looks at the following factors: (1) whether the person involved had a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as reasonable. Missoulian Inc. v. Board of Regents of Higher Educ. (1984), 207 Mont. 513, 522, 675 P.2d 962, 967.

¶22 In this case, the District Court held that individuals who disclose information to the Board of Pardons have an expectation of privacy created by statute, specifically § 46-23-108, MCA. Section 46-23-108, MCA, provides:

> The department shall keep a record of the board's acts and decisions available to the public. However, all social records, including the presentence report, the preparole report, and the supervision history obtained in the discharge of official duty by the department, are confidential and may not be disclosed directly or indirectly to anyone other than the members of the board or a judge. The board or a court may, in its discretion, when the best interests or welfare of a particular defendant or prisoner makes such action desirable or helpful, permit the inspection of the social record or any parts thereof by the prisoner or his attorney.

In passing this statute, the legislature attempted to define classes of information, *i.e.*, social records, presentence reports, preparole reports, and supervision histories, that are not subject to the right to know. However, we have held that the legislature does not have the power to dictate through the passage of a statute under what circumstances the right to know may be exercised unless it specifically finds that curtailment of the right is necessary

to protect the right of individual privacy. In re Lacy (1989), 239 Mont. 321, 325-26, 780 P.2d 186, 188. Similarly, the legislature may not specify certain documents to which the right does not apply.

¶23 In Lacy, 780 P.2d at 187, Allstate Insurance Company (Allstate) filed an application with the district court seeking production of records held by the Billings Police Department of its investigation into the death of one of Allstate's insureds. At that time, the Criminal Justice Information Act (CJIA) stated that "[d]issemination of confidential criminal justice information is restricted to criminal justice agencies [or] to those authorized by law to receive it. . . ." Section 44-5-303, MCA (1993). The district court denied Allstate's application, interpreting "authorized by law" to mean authorized by statute. Lacy, 780 P.2d at 188.

¶24 On appeal, we held that "any interpretation of § 44-5-303, MCA, which requires specific legislative authorization to review criminal justice information would render the statute unconstitutional." Lacy, 780 P.2d at 188. Thus, we held that "authorized by law" must be interpreted to mean authorized by statute or constitution, including Article II, Section 9's right to know. Lacy, 780 P.2d at 188.

¶25 We addressed the issue again in Bozeman Daily Chronicle v. City of Bozeman Police Dep't (1993), 260 Mont. 218, 859 P.2d 435. In that case, the Bozeman Police Department was ordered to show cause why it refused to release to the Bozeman Daily Chronicle the name of a police officer accused of sexual intercourse without consent. Bozeman Daily Chronicle, 859 P.2d at 437. We reiterated that a person "is 'authorized by law' to receive confidential criminal justice information under the Right to Know provision of the Montana Constitution, qualified only by Article II, Section 10, of the Constitution, the 'Right to Privacy' provision . . . ." Bozeman Daily Chronicle, 859 P.2d at 438 After balancing the police officer's privacy interests against the public's right to know, we concluded that the Bozeman Chronicle should be given access to the information. Bozeman Daily Chronicle, 859 P.2d at 440-41.

¶26 Although we interpreted the CJIA in a constitutional manner, we cannot do the same with § 46-23-108, MCA. Section 46-23-108, MCA, clearly denies the public access to certain information without considering the public's right to know. The limited exception to the statute's broad rule of nondisclosure allows an Inmate access to his or her own file upon a discretionary finding by the Board of Pardons or a court that "the best interests or welfare of a particular defendant or prisoner makes such

action desirable or helpful. . . ." Section 46-23-108, MCA. As noted above, "[t]he only limitation placed on the Montana right to know is the right of the individual to personal privacy." Larry M. Elison & Deborah E. Elison, Comments on Government Censorship and Secrecy, 55 Mont. L. Rev. 175, 189. Discretionary disclosure based on "best interests" or "desirable or helpful" does not withstand constitutional scrutiny.

¶27 Section 46-23-108, MCA, denies citizens, including Inmates, their right to inspect presentence reports, preparole reports, supervision histories, and other social records without balancing the right to know against the demands of individual privacy. Therefore, we hold that § 46-23-108, MCA, is unconstitutional.

¶28 The District Court further held that testimony provided to the Board of Pardons by third parties, including crime victims, members of the community, and professionals reporting psychological and other information regarding Inmates, "is critical to a parole board's ability to render fair and informed decisions. Without protection, fear of inmate reprisals would prevent many of these individuals from providing information to parole boards. Consequently, the privacy interests of those providing information to parole boards outweighs the inmates' right to know."

¶29 While we agree that encouraging the flow of information to the Board of Pardons is an important policy, we do not agree that anyone who provides information to the Board necessarily has a privacy interest that outweighs the Inmates' right to know. For example, law enforcement personnel would generally have no privacy interest in a document describing the crimes committed by an Inmate, nor would Department of Corrections personnel have a privacy interest in records reflecting an Inmate's behavior while under its supervision. A victim may have a privacy interest in a letter submitted to the Board of Pardons, but often this interest can be served by simply redacting his or her address or phone number. Likewise, when members of the community submit letters to the Board of Pardons expressing concern about an Inmate's possible parole, names and addresses can be removed. We conclude that each document in an Inmate's file must be examined to determine whether all or part of it is subject to the privacy exception of the right to know. See Art. II, § 9, Mont. Const.

¶30 Because the documents contained in an Inmate's file are documents of a public body, they are not only open to inspection by the Inmate, but also subject to

inspection by the general public. Obviously, an Inmate has a strong privacy interest in his or her own parole file. Thus, as with the Inmates' requests to examine their own files, the requests of third parties must be considered on a case-by-case basis to determine whether an Inmate or third party has a privacy interest in the document that outweighs the requesting party's right to know.

¶31 Having held that the privacy interests involved must be determined on a case-by-case basis, it is necessary to discuss the burden of asserting and proving these interests. We start with the broad proposition that under Article II, Section 9 of the Montana Constitution, the public has a right to inspect all documents in the control of the Board of Pardons. Thus, it is "incumbent upon the [Board of Pardons] to demonstrate why all or portions thereof should not be released because the rights of individual privacy outweigh the merits of public disclosure." Bozeman Daily Chronicle, 859 P.2d at 441.

¶32 Pragmatically, requiring the Board of Pardons to hold a hearing at which the Inmate and all parties with possible privacy interests appear each time an Inmate requests to review his or her parole file is unduly cumbersome. Thus, we hold that when the Board of Pardons or other agency is vicariously asserting a claim of individual privacy on behalf of an unnamed individual, the Board of Pardons should attempt to notify the individual, "advising the individual of the request for information and allowing waiver or objection." Elison, supra, at 197. If the individual asserts a privacy interest, or "[i]f notification is not possible, for example, if the individual cannot be located or the number of individuals involved would make notification pragmatically impossible," the Board of Pardons should independently weigh the privacy interests involved and "provide maximum access to the information while protecting the individual's right to privacy." Elison, supra, at 197-98.

¶33 Though the public's right to know may only be limited when "the demands of individual privacy clearly exceed the merits of public disclosure," Art. II, § 9, Mont. Const., when an Inmate asserts his or her right to know, there is another limitation that may be placed on the right. The United States Supreme Court has held that when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner v. Safley (1987), 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64. The State argues, and we agree, that the rights of the Inmates under the Montana constitution may be limited

by legitimate, penological interests as well.

¶34 Section 46-18-801, MCA, states: "Conviction of an offense does not deprive the offender of a civil or constitutional right, except as provided in the Montana constitution or as specifically enumerated by the sentencing judge as a necessary condition of the sentence directed toward the objectives of rehabilitation and the protection of society." Under Article II, Section 28 of the Montana Constitution (entitled "Rights of the convicted"), "[l]aws for the punishment of crime shall be founded on the principles of prevention and reformation. Full rights are restored by termination of state supervision for any offense against the state." Under these provisions, the State may limit or abrogate the rights of an Inmate, as long as it is done to prevent further offenses or for reformation of the Inmate.

¶35 For example, a defendant is sentenced to incarceration, in part, to prevent further offenses and to provide an opportunity for reformation. See § 46-18-101, MCA. As a result, certain rights of the Inmate are abrogated. Other rights, such as liberty, freedom of speech and expression, and the right of privacy, although not completely lost, may be substantially limited. Likewise, Article II, Section 9 of the Montana Constitution grants citizens the right to "observe the deliberation of all public bodies." Obviously, principles of prevention and reformation are not served by excusing an Inmate from prison to attend a public meeting.

¶36 Though we recognize that the State may limit Inmates' rights to serve its penological interests, we note that the provision of Article II, Section 9 that we have been focusing on, the right to examine documents of public bodies, not need be completely abrogated. For example, because allowing an Inmate to inspect a document submitted by prison personnel or other Inmates to the Board of Pardons may compromise safety, the Department of Corrections could assert its legitimate penological interest in maintaining order and security within its institutions. However, as with an individual's privacy interests, the Department of Corrections' interests can often be served by redacting names and other identifying characteristics from such documents. We hold that such decisions must be made on a case-by-case basis to ensure that an Inmate's right to know is only limited to the extent it serves the State's legitimate interests.

¶37 We hold that the Inmates' parole files are documents of a public body to which the right to know applies. We determine that once a party requests access to an

Inmate's file, it is incumbent upon the Board of Pardons to assert the privacy and penological interests involved. Only where the Board of Pardons or reviewing court determines that "the demand of individual privacy clearly exceeds the merits of public disclosure," Art. II, § 9, Mont. Const., or that a legitimate penological interest is served by nondisclosure, may access to an Inmate's parole files be denied.

¶38 The Inmates also argue that the Board of Pardons' failure to allow them to inspect and copy the contents of their parole files violates § 2-6-102, MCA. Section 2-6-102, MCA, states that "[e]very citizen has a right to inspect and take a copy of any public writings of this state . . . ." We determine that if a party is entitled to access an Inmate's parole file under the right to know, he or she may also copy the information contained therein pursuant to § 2-6-102, MCA.

¶39 Based on the foregoing, we hold that the District Court erred in dismissing the Inmates' claim that the Board of Pardons violated their constitutional right to know. We remand for further proceedings consistent with this opinion.

¶40 2. Do the Inmates have a right to inspect their parole files under the due process clauses of the Montana or federal constitutions?

¶41 Those Inmates who committed offenses prior to 1989 also argue that by denying them access to the information contained in their parole files, the Board of Pardons is violating their due process rights. Prior to 1989, § 46-23-201, MCA (1987), stated that "the board shall release on parole . . . any person confined in the Montana state prison or the women's correctional center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." The United States Supreme Court has held that the mandatory language of this statute, "shall release," creates a liberty interest in parole that is protected by the due process clause of the federal constitution. Board of Pardons v. Allen (1987), 482 U.S. 369, 377, 107 S.Ct. 2415, 2420, 96 L.Ed.2d 303.

¶42 In response to Allen, the Montana legislature amended § 46-23-201, MCA, to state that "the Board *may* release" inmates on parole when there is a reasonable probability that the prisoner can be released without detriment. Section 46-23-201, MCA (1989). The State argues that this amendment extinguished any federally-protected liberty interest in parole for all Montana Inmates. However, while those Inmates who committed offenses after 1989 concede that they have no liberty interest

in parole, those Inmates who committed their crimes prior to 1989 argue that they are entitled to due process protections. We agree.

¶43 Nevertheless, the due process to which an inmate is entitled at a parole eligibility hearing is substantially less than that to which he or she is entitled in an adversarial hearing. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (1979), 442 U.S. 1, 15, 99 S.Ct. 2100, 2108, 60 L.Ed.2d 668; Sage v. Gamble (1996), 279 Mont. 459, 929 P.2d 822. In Greenholtz, 442 U.S. at 16, Nebraska statutes provided that an inmate eligible for parole be given an opportunity to be heard by the parole board and, if parole was denied, be informed in what respects the inmate failed to qualify. The inmates claimed that this procedure violated due process, arguing, *inter alia*, that the parole board should be required to specify the particular evidence on which it based its decision. Greenholtz, 442 U.S. at 15. The Supreme Court held that a full, adversarial hearing is not required and that Nebraska's procedure, which allowed inmates to appear before the parole board and present statements on their own behalf, satisfied due process. Greenholtz, 442 U.S. at 15-16. The Court noted that this procedure was sufficient to ensure that the board was indeed reviewing the records of the parolee before it and allowed the parolee to present considerations as to why he or she was an appropriate candidate for parole. Greenholtz, 442 U.S. at 16.

¶44 This Court applied Allen and Greenholtz in Sage v. Gamble, 929 P.2d at 825. In Sage, 929 P.2d at 823, the petitioner was convicted of a crime committed in 1982 and became eligible for parole in 1993. The Board of Pardons did not allow the petitioner to appear before it and denied him parole. Sage, 929 P.2d at 823. The petitioner filed a writ of habeas corpus, arguing that he had a due process right to appear at his parole hearing personally. Sage, 929 P.2d at 823. The district court agreed and granted his writ. On appeal, this Court determined that under Allen, 482 U.S. at 377, the petitioner did have a liberty interest in parole. Sage, 929 P.2d at 825. Further, we inferred from Greenholtz, 442 U.S. at 15-16, that due process requires the Board of Pardons to allow parolees to appear before it personally to verify or refute the accuracy of the Board's records and to present any special considerations showing that the parolee is an appropriate candidate for parole. Sage, 929 P.2d at 825-26.

¶45 Those Inmates entitled to due process protection argue that to ensure the accuracy of the Board of Pardons' records, a right to which they are entitled under Sage, they must have access to their files. However, no precedent of the United States Supreme Court or of this Court leads us to conclude that the due process clause of

either the U.S. or Montana constitutions require that Inmates be allowed to inspect the specific information contained in the Board of Pardons' files. Rather, the purpose of the procedure approved in <u>Greenholtz</u>, 442 U.S. at 16, is to give the parolee an opportunity to verify that it is his or her file that the parole board has before it. The United States Supreme Court noted:

> [W]e find nothing in due process concepts as they have thus far evolved that requires the Parole Board to specify the particular "evidence" in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release.

<u>Greenholtz</u>, 442 U.S. at 15.

¶46 Further, in <u>Sage</u>, 929 P.2d at 826, we held that a parolee must be given a personal appearance before the Board of Pardons not to give the parolee an opportunity to examine and refute evidence in the Board's files, but rather to give the parolee an opportunity to speak on his or her own behalf and to ensure that the Board is reviewing the proper file. Therefore, we hold that due process does not require that the Inmates be allowed to review the contents of their parole files.

¶47 Based on the foregoing, we affirm the District Court's dismissal of the Inmates' claim that the Board of Pardons violated their due process rights.

¶48 Reversed in part, affirmed in part, and remanded for further proceedings.

/S/ W. WILLIAM LEAPHART

 We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ ED McLEAN

Judge of the District Court, sitting for

Justice Jim Regnier