FILED

12/22/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0097

DA 20-0097

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 318

JOHN O. MILLER,

     Plaintiff and Appellant,

  v.

STATE OF MONTANA, MONTANA BOARD
OF PARDONS AND PAROLE,

     Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2018-278
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Daniel V. Biddulph, Ferguson Law Offices, PLLC, Missoula, Montana

     For Appellee:

          Kyle P. Chenoweth, Assistant Attorney General, Agency Legal Services
Bureau, Helena, Montana

              Submitted on Briefs:  September 30, 2020

                   Decided:  December 22, 2020

Filed:

                    _____
                            Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 John O. Miller appeals the First Judicial District Court's ruling that the Montana Board of Pardons and Parole (Board) did not violate Miller's right to know, right to participate, or right to due process when it denied him parole without first furnishing him a copy of documents on which it relied in making its decision and that the Board did not unlawfully rely on a guideline without having adopted it as an administrative rule pursuant to the Montana Administrative Procedure Act (MAPA). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Miller is serving concurrent life sentences in prison on two 1991 convictions of deliberate homicide. The sentencing court declared Miller ineligible for parole for the first twenty-four years of his sentence. Because of Miller's "severe antisocial personality disorder," the court directed that, prior to any grant of parole:

> the proper authorities shall require the defendant to undergo a further psychological evaluation to determine at that time whether, in the professional opinion of a qualified person, the defendant is safe to be released into the general society and the protection of society does not require the defendant's further incarceration.

¶3 Miller first appeared before the Board in 2015, and the Board denied him parole. Two years later, Miller requested a new hearing because he had not been given the chance to review his parole file, sometimes termed Parole Book/Packet or Parole Report, and his 2015 appearance had not been videorecorded as required by § 46-23-110(1)(b), MCA. *See also* Admin. R. M. 20.25.401(2) (2016). The Board set a hearing for February 2018. Then-Board Chair Scott Cruse responded to Miller's request for documents in advance of his appearance, providing Miller with: (1) a copy of his Parole Report; (2) citations to

relevant Board rules; (3) a copy of 2017 Senate Bill 64; and (4) other documents from his file. The Board granted a request from the victims' family members to refrain from releasing their testimony to the public. Following the hearing, the Board again denied Miller's parole request.

¶4 In the Lewis and Clark County District Court, Miller sought judicial review of the Board's decision. He filed a complaint for damages and to void his 2018 parole hearing. Miller claimed the Board failed to comply with a 2017 legislative amendment that required it to develop parole guidelines to structure and guide parole decisions. 2017 Mont. Laws ch. 392, § 10 (codified in § 46-23-218(3), MCA). He contended that the Board adopted a parole guideline from the Council of State Governments (CSG) and used it in parole hearings without going through MAPA's rulemaking requirements.[1] *See* §§ 2-4-301 through 2-4-315, MCA. Miller also argued that the Board violated his right to due process and right to know by failing to provide him a copy of the guideline prior to his appearance and by failing to provide him a copy of his mental health evaluation contained in his parole file. Miller also claimed that the Board violated his right to equal protection when it effectively created two classes of inmates, *e.g.*, one with hearings before and one with hearings after the Board adopts the rules required to utilize this guideline.

¶5 The District Court rejected all of Miller's arguments and granted summary judgment to the Board. The court observed that the Board is in the process of adopting the guideline as a rule and agreed with the Board that the guideline was not a rule. The court found from

---

[1] The parties and the District Court used various terms, such as worksheet, guideline, or guideline rubric. We use the term "guideline" throughout this Opinion.

Board members' deposition testimony that they are not required to use the guideline when considering parole applications. The District Court concluded further that Miller's right to due process, right to know, and right to equal protection had not been violated. Because the guideline need not first have been adopted as a rule, the Board did not violate Miller's due process rights by failing to comply with MAPA. The District Court held that Miller's other constitutional challenges likewise lacked merit. Miller timely appealed.

**STANDARD OF REVIEW**

¶6      This Court reviews a summary judgment ruling de novo, applying the criteria of M. R. Civ. P. 56(c)(3). *Victory Ins. Co. v. Mont. State Fund*, 2015 MT 82, ¶ 10, 378 Mont. 388, 344 P.3d 977. "Summary judgment 'should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Victory Ins. Co.,* ¶ 10 (quoting M. R. Civ. P. 56(c)(3); *Bennett v. Hill*, 2015 MT 30, ¶ 9, 378 Mont. 141, 342 P.3d 691 (citations omitted)). "The moving party has the burden of establishing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Capital One, NA v. Guthrie*, 2017 MT 75, ¶ 11, 387 Mont. 147, 392 P.3d 158 (citation omitted).

**DISCUSSION**

¶7      *1. Did the District Court properly refuse to void the Board's 2018 parole decision*
        *even though it used the guideline without first having adopted it as a rule?*

¶8      In 2017, as part of a general revision of statutes related to the Board, the Legislature clarified the criteria the Board considers in determining whether to release an eligible

offender on nonmedical parole. Section 46-23-208, MCA. It also amended § 46-23-218, MCA, governing the Board's authority to adopt rules. In pertinent part, the amendment required the Board, in consultation with the Department of Corrections, to adopt rules to establish:

> (a) parole guidelines to structure and guide parole release decisions and the imposition of release conditions. The guidelines must include, in decreasing order of importance, the prisoner's:
> (i) risk and needs levels, as determined by a validated risk and needs assessment;
> (ii) participation in risk-reducing programs and treatment;
> (iii) institutional behavior as reflected by disciplinary records; and
> (iv) offense severity.

Section 46-23-218(3)(a), MCA. The Legislature expressly made the new law applicable to parole hearings conducted on or after the bill's July 1, 2017 effective date. 2017 Mont. Laws ch. 392, § 23.

¶9 At the time of Miller's 2018 hearing, the Board had not yet adopted the required rules. It had, however, obtained the suggested CSG guideline and had it available during Miller's proceedings. Miller contends that the new guideline has not gone through the rule-making process under MAPA and that the Board admits the guideline must be so adopted. He contends that the Board erred by not providing him a copy of or access to this guideline prior to his parole hearing and upon written request. Miller notes that he did receive a copy of the guideline template afterwards. He argues further that the guideline is subject to disclosure upon request and must be made public. Miller asserts that he thus is entitled to a new hearing.

5

¶10 The State points out that the Board implemented the guideline's use in August 2017. It argues that the statute imposed no deadline for adopting the prescribed rules and contends that the Board first used the guideline to ascertain its validity as required by § 46-23-218(4), MCA. It argues that Miller was not prejudiced when Board members referred to the guideline in his parole proceeding.

¶11 The District Court determined that the guideline was only a tool to assist in parole determinations. The court stated:

> The affidavits submitted by both parties demonstrate[] the guideline rubric has not yet been adopted as a rule pursuant to MAPA. Indeed, current Board Chair Annette Carter indicates the Board is *in the process* of adopting the guideline rubric as a rule, but that process is not complete. As such, the Court concludes the rule adoption procedures in MAPA do not apply to the Board's use of the guideline rubric during Miller's parole hearing.

¶12 The court accepted the Board's position that the guideline "is treated as a guiding document to help focus the conversation during parole interviews, and any score from the [guideline] does not determine whether an inmate is granted or denied parole." At the time of Miller's hearing, the new statute had been on the books for slightly longer than six months. As Board members stated in their depositions, they began to use the guideline during parole hearings as a tool to gather data and to validate this process in drafting an administrative rule. The State provided Miller in discovery with a copy of the Department of Corrections' draft notice of its proposed amendments to the administrative rules governing parole. Certainly, the Board does not have unlimited time to complete the rulemaking process, but the record demonstrated that it was underway.

6

¶13 The Board based its denial of Miller's parole on the nature and severity of the offenses and the lack of evidence that he was safe to be released into the community. "Parole is a matter of grace, not of right, and whether a convict is behind walls or walking the streets on parole, he remains subject to the sentence imposed and to the regulatory action of the parole authorities." *Lopez v. Crist*, 176 Mont. 352, 354-55, 578 P.2d 312, 314 (1978) (citing *State ex rel Herman and Roy v. Powell*, 139 Mont. 583, 589, 367 P.2d 553 (1961); *Petition of LaDoux*, 144 Mont. 9, 11, 393 P.2d 778 (1964)). The guideline to which Miller takes exception identifies factors the Board already routinely considered, such as program and treatment completion, institutional behavior, and offense severity. The existing administrative rule for granting release states:

> A hearing panel may release an eligible offender on nonmedical parole only when, in its opinion:
> (a) there is a reasonable probability that the offender can be released without detriment to himself/herself or the community;
> (b) release is in the best interests of society;
> (c) the offender is able and willing to fulfill the obligations of a law-abiding citizen; and
> (d) the offender does not require continued correctional treatment, or mental health therapy, vocational or other programs available in the correctional facility that will substantially enhance the offender's capacity to lead a law-abiding life if released.

Admin. R. M. 20.25.505(1) (2016).[2] The statutory criteria include similar factors, among numerous others. Section 46-23-208(4), MCA.

---

[2] Miller challenged Admin. R. M. 20.25.505, arguing that it conflicts with §§ 46-23-202 and 46-23-218(3), MCA. The District Court, relying on its previous determination that the Board is in the process of evaluating the guideline for eventual adoption as a rule, found no such grounds and denied the request. Miller does not appeal this ruling.

¶14 We agree with the State that Miller is not entitled to a new hearing because he cannot demonstrate the likelihood of a different outcome. The Board was clear in its disposition of the reasons for denying Miller parole. The guideline does not include terms that differ materially from the factors the Board was required by statute and by its prior rule to consider. The guideline was not the reason for the Board's decision, and Miller cannot show how any alleged rulemaking deficiencies affected the outcome of the proceeding. We conclude that the District Court appropriately granted summary judgment to the Board on this claim.

¶15 *2. Did the Board violate Miller's right to know, right to participate, and due process rights?*

¶16 Miller contends that the District Court erroneously concluded that Miller was not constitutionally entitled to review either the guideline or the mental health evaluation contained in his parole file prior to his parole hearing. Miller argues that the Board violated his right to know because both his parole file and the guideline are public documents he had a right to review. He maintains that his mental health evaluation was part of his file and also subject to disclosure. *Worden v. Mont. Bd. of Pardons & Parole*, 1998 MT 168, ¶ 20, 289 Mont. 459, 962 P.2d 1157. He contends that because he was denied the opportunity to review either the guideline, the mental health examination, or his score on the guideline worksheet, he was deprived of meaningful participation. Miller requests a new hearing because he was prejudiced when the Board withheld this information.

¶17 The State contends that the Board did not violate Miller's right to know or his right to participate. It argues that Miller produced no new evidence to demonstrate that the Board could reach a different result. The State explains that the "evaluation" to which Miller refers was a psychosocial history, not a mental health evaluation by a professional as his 1991 sentencing judgment explicitly required. Board Chair Cruse explained to Miller at the conclusion of the hearing that the document was not "a mental health evaluation by a qualified individual to answer the question that the court put forth" in its sentencing order. The State adds that it sent a copy of the guideline to Miller after the parole hearing. The State concludes that the District Court correctly found Miller was not prejudiced at the time of the hearing when he lacked copies of either the guideline or the psychosocial history, and Miller's constitutional rights thus were not violated.

¶18 We held in *Worden* that "the Inmates' [parole] files are 'documents of public bodies' within the scope of Article II, Section 9 of the Montana Constitution." *Worden*, ¶ 20. Here, however, because we have concluded that the guideline contained no criteria materially different from the statutory factors the Board was required to consider, Miller cannot demonstrate that the Board's failure to provide it to him in advance amounted to a constitutional deprivation. As the District Court observed:

> Assuming *arguendo* the Board erred by failing to provide a copy of the guidelines prior to the 2018 parole hearing, the error was harmless. The Board based its decision not to grant parole on the seriousness of Miller's crimes and the lack of a psychological evaluation to determine whether he could safely be released into the general society (a requirement of Miller's sentence for the two homicides he committed). Miller's access to the guideline rubric prior to the hearing would not have affected the Board's decision to deny parole.

9

¶19 "Under both Montana and federal precedent, parole is a privilege and not a right." *McDermott v. McDonald*, 2001 MT 89, ¶ 19, 305 Mont. 166, 24 P.3d 200. As the District Court properly concluded, the guideline was not the deciding factor for Miller's parole determination. Therefore, even if Miller had a copy of the guideline before his appearance, it would not have changed the outcome. In like fashion, because the psychosocial history did not satisfy the judgment's requirement for a psychological evaluation and accompanying professional opinion that Miller is safe to be released, Miller has not shown how his possession of the document prior to the hearing would have affected the outcome.

¶20 Next, Miller had no constitutional right to know about the testimony of the victims' family members. The applicable administrative rule states:

> (6) At the presiding hearing panel member's discretion, the victim's statement and testimony will be kept confidential if the presiding member finds the victim's privacy interest outweighs the public's right to know. A recording of the hearing will not personally identify the victim without the victim's written consent.

Admin. R. M. 20.25.401(6) (2016). The family members of the two victims requested that their testimony be kept private. The Montana Constitution excepts from the right to know documents "in which the demand of individual privacy clearly exceeds the merits of public disclosure." Mont. Const. art. II, § 9. The Board's rules are in accord: "Information is confidential when the presiding member finds a person's privacy interest outweighs the public's right to know." Admin. R. M. 20.25.401(7)(a) (2016). The Board acted within its authority when it kept confidential the family members' testimony.

¶21 Miller next contends that the Board violated his due process rights because, not only did it deny him a copy of the guideline but, when he reviewed his parole file, twelve years of his programming and training were missing from the record. Miller explains that because of an incomplete parole file, he did not sign the file prior to his appearance before the Board. The State responds that Miller does not state any due process claim with these allegations.

¶22 "It is well established that 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Sage v. Gamble*, 279 Mont. 459, 464-65, 929 P.2d 822, 825 (1996) (citing *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 12, 99 S. Ct. 2100, 2106 (1979) (internal citation omitted)). We held in *Sage* that the Board's personal interview of an inmate prior to his release on parole "is necessary to satisfy the minimum due process requirements [under the federal constitution] . . . and as independently required by Article II, Section 17, of the Montana Constitution." *Sage*, 279 Mont. at 468, 929 P.2d at 827 (citing *Greenholtz*, 442 U.S. at 12-13, 99 S. Ct. at 2106). On the other hand, because denial of parole "involves the loss of the mere anticipation of freedom—freedom to which the lawfully-convicted inmate is otherwise not entitled[—]due process is satisfied when the prisoner seeking parole is, at a minimum, provided with an opportunity to be heard and a written statement explaining why he was denied parole." *McDermott*, ¶ 11 (quoting *Greenholtz*, 442 U.S. at 16, 99 S. Ct. at 2108, and *Sage*, 279 Mont. at 465, 929 P.2d at 825).

¶23 The District Court concluded that Miller's due process rights were not violated. Miller appeared in person and received a copy of the written decision, which is all the process he was due. *McDermott*, ¶ 11. It concluded further that Miller had not shown a denial of equal protection:

> At the time of Miller's February 2018 parole hearing, the Board was in the process of evaluating those guidelines but had not yet adopted any new rules pursuant to MAPA. Consequently, Miller's parole hearing was carried out in the same manner as parole hearings for all similarly situated inmates. There is no equal protection claim to be made based on rules an agency has yet to adopt.

We agree. The Board did not violate Miller's constitutional rights when it denied him parole.

¶24 Finally, to the extent Miller raises an issue about records missing from his parole file, we decline to consider it.

> The requirement of a personal interview provides the necessary opportunity for an inmate to verify or refute the accuracy of the Board's accumulated records and to present any special considerations which might demonstrate why he or she is an appropriate candidate for parole. Such a procedure is clearly necessary to the purpose of minimizing the risk of error in a parole eligibility determination.

*Sage*, 279 Mont. at 468, 929 P.2d at 827 (citing *Greenholtz*, 442 U.S. at 13, 99 S. Ct. at 2107). Miller had counsel present with him during the February 2018 hearing. In response to Cruse's question, Miller advised the Board that he had not signed his parole report because it was "missing about 12 years' worth" of information. Cruse gave him the opportunity "to fill in the blanks." Miller and the Board discussed his programming and accomplishments in prison, and his counsel acknowledged that the Board had "a lot of

good information about how [Miller] spent his time on risk and assessment, his programs that he's undergone."

**CONCLUSION**

¶25 The Board's February 2018 decision denying Miller parole did not violate his statutory or constitutional rights. The District Court properly granted the Board's cross-motion for summary judgment, and its decision is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA