No. 01-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 155N

CHRISTINE LEE and JOHN MIDDLEMISS,

        Plaintiffs and Appellants,

    v.

CROSSROADS CORRECTIONAL CENTER,
through appointed agent
WARDEN JIM MACDONALD,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Ninth Judicial District,
                  In and for the County of Toole,
                  The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

        Christine Lee, Conrad, Montana (*pro se*), John Middlemiss, Crossroad
Correctional Center, Shelby, Montana (*pro se*)

        For Respondent:

        Daniel Hoven, Mary K. Giddings, Browning, Kaleczyc, Berry & Hoven,
Helena, Montana

        For Amicus:

        Diana L. Koch, Department of Corrections, Helena, Montana

Submitted on Briefs: March 28, 2002

Decided:  July 12, 2002

Filed:

_____
                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Appellants Christine Lee (Lee) and John Middlemiss (Middlemiss) appeal from an order of the Ninth Judicial District Court, Toole County, dismissing their amended complaint with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6), M.R.Civ.P., based on a motion by Respondent Crossroads Correctional Center (CCC). We reverse and remand for further proceedings consistent with this Opinion.

¶3     We address the following issue on appeal as framed by this Court: Did the District Court err in dismissing Appellants' claim of wrongful denial of visitation?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4     Lee was employed at CCC as the kitchen supervisor for Best Foods Inc. During this same time, Middlemiss, an inmate at CCC, was assigned to the kitchen as a cook. Lee and Middlemiss developed a friendship during this time. Shortly after their relationship developed, Lee was terminated as an employee of CCC. Thereafter, Lee and Middlemiss began corresponding by mail and telephone which led to the development of a relationship which Appellants characterize as serious and intimate. Eventually, Lee and Middlemiss requested visitation. CCC denied their request for visitation on the grounds that visitation of

2

an inmate by a former employee of the facility created a security concern.

¶5 Lee and Middlemiss, acting *pro se*, then filed a complaint in District Court, later amended, alleging that CCC wrongfully denied visitation. CCC filed a motion to dismiss Appellants' amended complaint for failure to state a claim under Rule 12(b)(6), M.R.Civ.P.[1] The District Court issued an order granting CCC's motion and dismissed Appellants' amended complaint with prejudice. Lee and Middlemiss then filed a motion to reconsider, which the District Court denied. Lee and Middlemiss now appeal the order dismissing their claims with prejudice. The Montana Department of Corrections (DOC) requested leave to participate in this appeal as amicus which we granted.

## II. STANDARD OF REVIEW

¶6 Whether the district court properly granted a Rule 12(b)(6), M.R.Civ.P., motion to

---

[1]We note here that in addition to the substantive issues discussed below, CCC asserted in its motion at the trial court level that Lee and Middlemiss also failed to state a claim upon which relief could be granted because they failed to exhaust the administrative appeals procedure by appealing the denial of visitation to CCC's Warden, as provided by CCC policies. *See* CCC Visitation Policy 16-100.5 PROCEDURES A. APPROVAL OF VISITORS 10.; *Sandin v. Conner* (1995), 515 U.S. 472, 487 n.11, 115 S.Ct. 2293, 2302 n.11, 132 L.Ed.2d 418 (prisoners may find protection from arbitrary state actions by following internal prison grievance procedures). However, CCC does not raise this as an issue on appeal. Therefore, for purposes of this decision, we assume that Lee and Middlemiss properly exhausted the administrative procedures.

dismiss presents a question of law. *Worden v. Montana Bd. of Pardons & Parole*, 1998 MT 168, ¶ 5, 289 Mont. 459, ¶ 5, 962 P.2d 1157, ¶ 5. We review questions of law to determine whether the district court's application or interpretation of the law is correct. *Worden,* ¶ 5. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief. *Orozco v. Day* (1997), 281 Mont. 341, 346, 934 P.2d 1009, 1012. A motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pled allegations in the complaint; in considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. *Worden,* ¶ 5.

## III. DISCUSSION

¶7 **Did the District Court err in dismissing Appellants' claim of wrongful denial of visitation?**

¶8 Lee and Middlemiss argue the District Court erred in dismissing their complaint. Lee and Middlemiss assert their constitutional rights were violated when CCC denied Lee's visitation with Middlemiss because they have a liberty interest in visitation with each other which this Court should recognize as a constitutional privilege. Lee and Middlemiss further argue that CCC's denial of their visitation request was arbitrary and a violation of CCC's visitation policy, as well as the visitation policy of the Department of Corrections. They claim that Lee is being discriminated against and denied the right to visit Middlemiss on unsubstantiated "vague" and "insulting" grounds. They also argue that CCC's denial of

visitation based on security concerns is inconsistent because, currently, they are allowed mail and telephone contact.  In making their arguments, Lee and Middlemiss assert that their rights are distinguishable from each other and that Lee has additional constitutional rights as a free person.  Appellants ask for an order either granting visitation or an order requiring CCC to give specific reasons for denial.

¶9    CCC contends that the District Court was correct in determining that Lee and Middlemiss have no constitutional rights to visitation and that therefore no rights were violated.  They further assert that they have discretion to institute reasonable rules and policies for visitation based on legitimate penological interests.  CCC argues that it also has discretion to decide whether or not to deny visitation for security reasons based on its policies.  Finally, CCC asserts that it properly denied Lee's visitation because Lee's former employment with CCC, including her knowledge of the security procedures of the prison, and her romantic relationship with Middlemiss, pose a security concern that constitutes a legitimate basis on which to deny visitation.

¶10    Amicus DOC generally agrees with CCC.  In addition, Amicus also distinguishes between Lee and Middlemiss by asserting that Lee does not have standing to assert  deprivation of a liberty interest.

¶11    The District Court relied on *Deserly v. Department of Corrections*, 2000 MT 42, ¶ 20, 298 Mont. 328, ¶ 20, 995 P.2d 972, ¶ 20 (citing *Kentucky Dep't of Corrections v. Thompson* (1989), 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506; and *Spear v. Sowders* (6th Cir. 1995), 71 F.3d 626, 630) and determined that there is no constitutional liberty interest in visitation for either the inmate or the visitor.  Therefore, the District Court decided as a matter of law that:

If no such liberty interest exists, then the Defendants could not have violated due

5

process rights with respect to such non-existent liberty interest. Therefore, regardless of the factual allegations, no legal basis exists for Plaintiffs' claim that they enjoy a liberty interest in prisoner visitation and the Defendants violated due process with respect to the deprivation of that interest.

On this basis, and no more, the District Court dismissed Appellants' complaint.

¶12 Before we discuss the District Court's decision, we must address the threshold issue asserted by both Lee and Amicus, that Lee's standing and rights in this case are somehow distinguishable from those of Middlemiss. Both assert, for different reasons, that Lee's position as a free person requires a different analysis of the visitation at issue here than if the issues are analyzed from the perspective of Middlemiss' rights. We disagree. In *Bazzetta v. McGinnis* (6th Cir. 1997), 124 F.3d 774, 780-81, the court held that when considering regulations regarding contact visits, there is no real distinction between the rights of an inmate versus the rights of an outsider, stating: "the spectre of harm to innocent family members should not be permitted to insulate a felon from the condign consequences of his criminal deportment." *Bazzetta,* 124 F.3d at 781 (quoting *United States v. De Cologero* (1st Cir. 1987), 821 F.2d 39, 44. For purposes of considering visitation issues between an outsider and an inmate at a prison, we adopt this rationale and hold that the analysis here for Lee and Middlemiss is dictated by Middlemiss' rights.

¶13 Turning now to the main issue in this case, we agree with the District Court, with CCC, and with Amicus that Lee and Middlemiss have no constitutional right of unfettered visitation as we held in *Deserly*. *Deserly*, ¶ 20; *see also Thompson*, 490 U.S. at 461, 109 S.Ct. at 1909, 104 L.Ed.2d 506 (the "denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' [citation omitted] and therefore is not independently protected by the Due Process Clause").

¶14 We also agree with CCC and Amicus that we must show deference to prison officials in

matters involving institutional security and that the proper standard of review of a prison regulation under constitutional challenge is whether it is reasonably related to a legitimate penological interest. *See Worden,* ¶ 33; *Lewis v. Casey* (1996), 518 U.S. 343, 361, 116 S.Ct. 2174, 2185, 135 L.Ed.2d 606; *Turner v. Safley* (1987), 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64.

¶15    However, we disagree that the District Court was correct in dismissing Lee's and Middlemiss' complaint based solely on whether Lee and Middlemiss had a constitutional right to visitation.   Rather, a review of federal and state case law reveals that, despite the lack of constitutional significance for visitation, the general rule is that "[v]isitation privileges are a matter subject to the discretion of prison officials." *Berry v. Brady* (5th Cir. 1999), 192 F.3d 504, 508 (quoting *McCray v. Sullivan* (5th Cir. 1975), 509 F.2d 1332, 1334); *see also Thorne v. Jones* (5th Cir. 1985), 765 F.2d 1270, 1273; *Puckett v. Stuckey* (Miss. 1993), 633 So.2d 978, 982 (Although prisoners do not enjoy an absolute constitutional right to unrestricted visitation, and their visitation privileges are subject to the discretion of prison officials, restrictions on an inmate's visitation privileges should not be imposed arbitrarily or discriminatorily).   Consequently, because Lee and Middlemiss also asserted that CCC's exercise of discretion was arbitrary, the District Court was required to consider whether CCC properly exercised its discretion.   Therefore, the District Court erred in granting the motion to dismiss under Rule 12(b)(6), M.R.Civ.P.

¶16    We note in making this holding that there is an important distinction between review of a specific prison regulation and review of application of that regulation. While review of the constitutionality of a regulation or policy is guided by whether it is reasonably related to a legitimate penological objective, the review of a prison official's exercise of discretion in  the enforcement of that regulation or policy necessarily requires consideration of specific facts as applied to specific

7

individuals. *See for example In re Brown* (1968), 150 Mont. 483, 485, 436 P.2d 693, 694 ("There is nothing alleged here that causes us to believe that any arbitrary action has been taken against petitioner."); *Peterson v. Shanks* (10th Cir. 1998), 149 F.3d 1140, 1145 (Peterson failed to allege that discretion was abused); *Shaw v. Murphy* (2001), 532 U.S. 223, 232, 121 S.Ct. 1475, 1481, 149 L.Ed.2d 420 (to prevail on remand, inmate must overcome the presumption the prison officials acted within their discretion); *Abu-Jamal v. Price* (3d Cir. 1998), 154 F.3d 128, 136 (prison official justified in limiting visitation because prison had legitimate reason to suspect that visitation privileges were being abused so that inmate could receive more than the permitted number of social visits); *Thorne*, 765 F.2d at 1271-75 (prison officials justified in denying visitation privileges to inmate's mother because mother refused to submit to strip search prior to visit and officials had reliable information that prisoner was receiving narcotics through visiting room); *Robinson v. Palmer* (D.C. Cir. 1988), 841 F.2d 1151, 1156-57 (prison officials' permanent ban on visits by prisoner's wife after wife caught attempting to smuggle marijuana into prison justified because ban was reasonable response to threat of future smuggling and prisoner had other ways to communicate with wife); Stephen S. Sypherd and Gary M. Ronan, *Substantive Rights Retained by Prisoners*, 89 Geo. L.J. 1898 (2001).

¶17    Further, the trial court record established by the parties contains CCC's written visitation policy which also indicates that CCC's exercise of discretion requires consideration of specific facts as applied to specific individuals. These guidelines include the following:

> 16-100.4 POLICY: . . . The number of visitors an inmate may receive and the length
> of visits are to be limited only by Facility schedules, space or personnel constraints
> or contract requirements. The Warden or designee can make an exception when
> Reasonable Suspicion exists that such visits jeopardize the security of the Facility or
> the safety of the Inmate or visitor.

8

The policy also defines reasonable suspicion as:

> 16-100.3 DEFINITIONS: <u>Reasonable Suspicion</u> - Actions, conduct, or circumstances which lead an employee to suspect that the visitor may present a risk to the security and order of the Facility.

Finally, the CCC policies also state:

> 16-100.5 PROCEDURES: A. APPROVAL OF VISITORS . . . 8. If there is reason to believe that a person may have a potentially detrimental effect on the inmate or who may constitute a threat to the security of the facility, that person will be excluded from the approved visitors list.

*See also* Montana Department of Corrections Offender Visiting Policy No. DOC 5.4.4, IV(A)(4). Therefore, the Warden's exercise of discretion regarding visitation must be based on facts that are particularly related to an individual.

¶18    In this case, because Lee's and Middlemiss' complaint was dismissed based only on the constitutional issue, the trial court did not consider whether CCC properly exercised its discretion. Consequently, the trial court did not consider whether there was evidence demonstrating that prison authorities had "reasonable suspicion"--based on specific, objective facts and rational inferences specifically targeted at Lee--that Lee would be a threat to prison security. *See* CCC visitation policies, 16-100.3, 16-100.4, 16-100.5. Therefore, on remand the District Court must determine whether CCC's decision to deny Lee and Middlemiss visitation is a proper exercise of discretion in light of specific objective facts and rational inferences specifically targeted at Lee.

### IV. CONCLUSION

¶19    Because the District Court failed to address whether CCC appropriately exercised its discretion in denying the request by Lee and Middlemiss for visitation and because we

cannot exercise appellate review based on a decision that was not made by the trial court, we reverse and remand for determination of this issue.

¶20 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER

Justice Jim Rice specially concurring.

¶21 I concur with the Court's holding herein.

¶22 The District Court found that the "lynchpin of Plaintiffs [sic] amended complaint is the assertion each enjoys a liberty interest in visitation . . ." and, after finding no such interest, dismissed the Amended Complaint. The Court affirms the District Court's holding on the liberty interest, but finds, at ¶¶ 9 and 16, that the District Court erred because Lee and Middlemis had "also asserted that CCC's exercise of discretion was arbitrary" and "a violation of the CCC's visitation policy," claims which the District Court failed to address.

¶23 The District Court's failure to address violation of the visitation policy is understandable, given the inadequacy of the Plaintiffs' pleadings on this issue. The Court's explanation of these allegations is most generous. In fact, the Court's summary of this "claim," if it may properly be called that, virtually exceeds the substance of the claim itself. And while the Amended Complaint also referenced certain "prisoner's rights" rules, it did not sufficiently cite to these rules to allow the Defendant to identify them.

¶24 Although asserting, in toto, a "blatant disregard for D.O.C. and state policy," the Amended Complaint does not allege what visitation policies have been disregarded nor does it set forth facts which would demonstrate that a particular policy had been disregarded. "While Montana adheres to the notice pleading requirements of 'a short and plain statement of the claim showing that the pleader is entitled to relief . . .' (Rule 8(a), M.R.Civ.P.), the claim must give notice to the other party of the facts which the pleader expects to prove, and the facts must disclose the presence of all the elements necessary to make out a claim." *Mysse v. Martens* (1996), 279 Mont. 253, 266, 926 P.2d 765, 773. Plaintiffs' "claim" could very well have been subject to either a motion for more definite statement or a motion to dismiss for failure to state a claim. However, neither motion was made by the Defendant. Instead, Defendant responded to the issue by offering the entirety of the Department's visitation policies and arguing that the policies were reasonable. For that reason, I must concur with remanding the matter so that the District Court can determine if CCC properly exercised its discretion under the policies in denying the requested visitation.


/S/ JIM RICE


Chief Justice Karla M. Gray joins in the concurring opinion of Justice Rice.


/S/ KARLA M. GRAY


13